U.S.C.A. Docket No. 12-57262

————————————————

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————————————

**ANTHONY V. NIGRO,**
Plaintiff and Appellant,


vs.


**SEARS, ROEBUCK AND CO.,**
Defendant and Appellee.

————————————————

Appeal from the Judgment of the U.S. District Court
Southern District of California
Case No. 3:11-cv01541MMA(JMA)
The Honorable Michael M. Anello, Judge Presiding

————————————————

APPELLANT'S OPENING BRIEF

————————————————

LAW OFFICES OF KIRK D. HANSON
Kirk D. Hanson, SBN 167920
2790 Truxtun Rd., Suite 140
San Diego, CA 92106
Telephone (619) 523-1992
Facsimile (619) 523-9002

*Attorney for Plaintiff and Appellant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................iii

JURISDICTIONAL STATEMENT .....................................................................1

    A.    District Court..............................................................................1

    B.    Court of Appeals ........................................................................1

    C.    Timeliness of the Appeal ..........................................................1

    D.    Appealability..............................................................................1

STATEMENT OF ISSUES....................................................................................2

STATEMENT OF FACTS AND PROCEEDINGS BELOW.................................3

    A.    Mr. Nigro's Employment With Sears And His Termination.................................3

    B.    Proceedings Below.....................................................................14

SUMMARY OF ARGUMENT .............................................................................15

ARGUMENT.........................................................................................................16

I.    STANDARD OF REVIEW ......................................................................16

II.    THE COURT ERRED IN GRANTING SEARS' MOTION FOR
SUMMARY JUDGMENT .......................................................................17

    A.    The Court Erred In Granting Summary Judgment On Nigro's First
Cause Of Action—Failure To Accommodate.........................17

    B.    The Court Erred In Grating Summary Judgment On Nigro's Second
Cause Of Action—Failure To Engage In The Interactive Process ........................27

    C.    The Court Erred In Granting Summary Judgment On Nigro's
Third Cause Of Action – Discrimination/Wrongful Termination.........................31

        1.    Discrimination..........................................................31

        2.    Wrongful Termination .............................................32

i

D.      The Court Erred In Granting Summary Judgment On Nigro's Fourth Cause
Of Action—Wrongful Termination In Violation Of Public Policy.......................37

CONCLUSION...........................................................................................................39

STATEMENT OF RELATED CASES.......................................................................40

CERTIFICATION OF COMPLIANCE......................................................................40

CERTIFICATE OF SERVICE...................................................................................41

# TABLE OF AUTHORITIES

## CASES

*A.M. v. Albertsons,*
178 Cal.App 4th 455 (2009)....................................................................19, 20

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)...............................................................................16, 24

*Bravo v. City of Santa Maria*
665 F.3d 1076 (9th Cir. 2011)....................................................................16

*Green v. State of Calif.,*
42 Cal.4[th] 254 (2007)........................................................................17, 18, 23

*Hanson v. Lucky Stores, Inc*
74 Cal.App.4[th] 215 (1999)........................................................................18

*Humphrey v. Mem'l Hosps. Ass'n.*
239  F.3d 1128 (9th Cir. 2001).............................................................*passim*
*Kimbro v. Atlantic Richfield Co.*
889 F.2d 869 (9th Cir. 1989)......................................................................36

*McAlindin v. County of San Diego,*
192 F.3d 1226 (9th Cir. 2000)....................................................................16

*Nelson v. City of Davis,*
571 F.3d 924 (9th Cir. 2009).....................................................................16

*Nissan Fire Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*
210 F.3d 1099 (9th Cir. 2000).....................................................................24

*Oiye v. Fox,*
211 Cal.App.4[th] 1036 (2012).......................................................................25

*Scotch v. Art Institute of Calif.-Orange Co.,*
173 Cal.App.4[th] 986..........................................................................17,27,30

*Surrell v. Cal. Water Serv. Co.*
518 F.3d 1097 (9th Cir. 2008).....................................................................18

*Wysinger v. Automobile Club of So. Calif.*
 157 Cal.App.4[th] 413 (2007)........................................................................27

*United States v. Shumway,*
199 F.3d 1093 (9th Cir. 1999).......................................................................25

*Turner v. Anheuser-Busch, Inc.,*
7 Cal.4th 1238, 1253 (1994)........................................................................37

*City of Moorpark v. Sup.Ct.,*
18 Cal.4th 1143, 1161 (1998).......................................................................38

## STATUTES

28 U.S.C. §1291.............................................................................................1
28 U.S.C. §1332.............................................................................................1
F.R.E. §801 (d)(2)..........................................................................20, 21, 26
Cal. Gov. C. §12900......................................................................................14
Cal. Gov. C. §12926(o)..................................................................................18
Cal. Gov. C. §12940(m)................................................................17, 19, 27
Cal. Gov. C. §12940(n)..................................................................27, 28, 31

# JURISDICTIONAL STATEMENT

## A.    District Court

This case was removed to the District Court based upon diversity of citizenship under 28 U.S.C. §1332, with amounts in controversy exceeding $75,000. See Excerpts of Record ("ER") 771-846[1].  Plaintiff and Appellant Anthony V. Nigro is a citizen of California, while Defendant and Appellee Sears, Roebuck, and Co. is a corporation with its principal place of business in the State of Illinois and the State of New York. ER 772.

## B.    Court of Appeals

This Court has jurisdiction of this appeal under 28 U.S.C. §1291.

## C.    Timeliness of the Appeal

Judgment was entered on November 28, 2012. ER 1.  Notice of Appeal was filed on December 13, 2012. ER 18.

## D.    Appealability

This appeal is from a final judgment fully resolving the issues between the parties presented to the District Court.

---

[1] Record citations are to ER ("Excerpts of Record") followed by the consecutively paginated number within the ER and the documents in the ER are arranged by date in chronological order beginning with the document with the most recent date (e.g., ER 1 is the Judgment appealed from located at page 1 of the ER).

## STATEMENT OF ISSUES

The issues are:

(1) whether after a series of successful accommodations for an employee's medical disability that included a later shift start time and leaves of absence when needed, an employer can then deny these accommodations without any interaction with the employee and without any discussion of alternative accommodations?; and,

(2) whether an employee with a medical disability has established a prima facie causal connection between his disability and termination, where the employer terminates the employee for absenteeism that is directly caused by the employee's disability?

## STATEMENT OF FACTS AND PROCEEDINGS BELOW

### A.    Mr. Nigro's Employment With Sears And His Termination

Plaintiff and Appellant Anthony V. Nigro ("Nigro") began working at Defendant and Appellee Sears, Roebuck, and Co.'s ("Sears") store in Carlsbad, California as a Quality Maintenance Assistant ("QMA") in May of 2007. Mr. Nigro's job duties required him to perform physical labor, such as replacing floor tiles, changing air conditioning filters, plumbing, and otherwise performing general maintenance work. ER 272.

Mr. Nigro has a serious medical condition known as ulcerative colitis, which is a long-lasting inflammation of the digestive tract that causes abdominal pain, diarrhea and frequent bloody stools. ER 184, 270, 412-414, 418-423. Ulcerative colitis can be severe or mild, and when Mr. Nigro's condition was severe, he could not work. ER 184, 424-426. Stress can exacerbate or cause ulcerative colitis to flare-up or become more severe. ER 185, 432, 433. Mr. Nigro's physician told him that less physical labor could be beneficial for his condition. ER 185, 298, 299.

Jason Foss was the Operations Manager at the Sears Carlsbad store where Mr. Nigro worked, and was Mr. Nigro's direct supervisor. Requests by Mr. Nigro for accommodations related to his medical condition were to go directly to Jason Foss. ER 183, 206, 210, 259, 260. Mr. Nigro disclosed his medical condition to Sears during the hiring process and to Jason Foss shortly after being hired. ER 183,

184, 271-274. Chris Adams is the District General Manager for Sears and was responsible for the Carlsbad store at the time Mr. Nigro worked there. Adams was advised of Mr. Nigro's medical condition and the need for Mr. Nigro to take a leave of absence when necessary. ER 184, 404, 405.

Genevieve Petty was Sears' Human Resources Lead at the Carlsbad store. She reported directly to Jason Foss and assisted him with his human resources duties. Ms. Petty was not Mr. Nigro's supervisor. ER 183, 184, 260, 376, 392.

When Mr. Nigro's ulcerative colitis flared-up, he would not sleep well, if at all, during the night because of the frequency of his bloody bowel movements. When this occurred, a reasonable accommodation that enabled Mr. Nigro to stay at work and do his job was to allow him to start his shift at a later start time of 9:00 a.m. instead of the usual 6:00 a.m. start time. ER 185, 287-291, 293, 294, 344, 352, 353, 426, 427. Mr. Nigro's direct supervisor, Jason Foss, made this accommodation for Mr. Nigro approximately 30 times while Nigro worked at Sears. ER 187, 211-213. This accommodation was not a hardship for Sears. ER 189, 242. Another possible accommodation that would allow Mr. Nigro to stay at work when his ulcerative colitis flared-up would be to give him a job working close to the bathroom. ER 185, 186, 416.

At the end of 2007, Mr. Nigro was transferred from the Field QMT position to an in-store QMT position. The field QMT position involved traveling between

stores to perform maintenance repairs, whereas the in-store QMT position involved a permanent assignment to the Sears' Carlsbad store. This transfer was done as an accommodation for Mr. Nigro's ulcerative colitis because the in-store QMT position gave Mr. Nigro quick access to a bathroom if needed, whereas the traveling QMT field position often involved limited access to bathrooms. ER 186, 275, 276, 295-297.

It is Sears' written policy to evaluate whether time off from work to heal and recuperate would be an appropriate accommodation for an employee suffering from a medical disability that makes the employee unable to perform any work. ER 186, 395, 400, 401. When Mr. Nigro's ulcerative colitis became so severe that he could not work, his physician indicated that a reasonable accommodation is time off from work to heal and recuperate. ER 185, 428, 429. In March of 2008, Mr. Nigro took a 2 to 3 month leave as an accommodation for his ulcerative colitis, which leave was approved by Sears. ER 186, 300-302-359, 360. At the end of December 2008, Mr. Nigro took a 4 month leave as an accommodation for his ulcerative colitis, which leave was approved by Sears. ER 186, 306-309, 361-364. The December 2008 leave came about after an unsuccessful accommodation of a transfer to the position of Assistant Auto manager, which required less physical labor than the maintenance position. The accommodation failed because the Auto Manager, Bill Daily, was upset that Mr. Nigro had been given the position and told

other employees that Nigro should not have been given the position due to his disability. ER 186, 277—279, 303—305. Shortly thereafter, Jason Foss overheard a conversation between District General Manager Chris Adams and the store loss prevention manager wherein Adams stated, referring to Mr. Nigro, "I'm done with that guy." ER 193, 221—226.

During the time Mr. Nigro was on his 4 month medical leave commencing in December 2008, his medical benefits were erroneously cancelled by Sears, effective January 1, 2009. ER 187, 310—313. Likewise, while Mr. Nigro was on this leave, Human Resources Lead Genevieve Petty received conflicting and erroneous instructions from Sears concerning Mr. Nigro's pay and benefits, resulting in the loss of his pay and benefits. ER 188, 377—379, 380, 381, 382, 393, 394.

Larry Foerster became the General Manager of the Sears' Carlsbad store when Mr. Nigro returned to work on May 4, 2009 from his medical leave that commenced in late December 2008. Mr. Nigro first met Foerster when he returned from leave on May 4, 2009, as Foerster was not the General Manager of the Carlsbad store at the time Mr. Nigro began his medical leave in late December of 2008. ER 187, 258, 279, 314, 315. Foerster testified that he knew Mr. Nigro had a medical condition that caused Nigro to be absent from work at times. ER 187, 259.

On May 4, 2009, when Mr. Nigro first returned to work at Sears from his medical leave, he could perform his job duties without any restrictions or accommodations. This medical leave was a successful accommodation for Mr. Nigro's ulcerative colitis. ER 188, 315, 319, 354, 355. However, shortly after Mr. Nigro returned from medical leave, his ulcerative colitis flared-up as a result of improper deductions from his pay and the cancellation of his medical benefits. ER 190, 197, 417, 423, 424, 430—432, 436, 437, 335—337, 188, 377—379, 380—382, 393, 394. For example, Mr. Nigro worked 180.21 hours for the time period of May 4, 2009 (when he returned from leave) through June 5, 2009, and earned a total gross wage amount of **$3,251.61**, but was only actually paid **$287.49** for this four week period as a result of improper deductions by Sears from his pay. ER 190, 195—201, 324—327, 328—332, 365—368.

As a result of the loss of Mr. Nigro's pay and benefits when he returned to work on May 4, 2009, he could not buy food, buy medications for his colitis, pay rent, or support his minor daughter, all of which caused a severe flare-up of his ulcerative colitis. ER 190, 197, 417, 423, 424, 430—432, 436, 437, 335—337. Mr. Nigro's physician, Robert E. Murad, M.D., summed up the situation in his PROGRESS NOTE following his examination of Mr. Nigro on July 2, 2009. Dr. Murad's PROGRESS NOTE report states in pertinent part:

HISTORY OF PRESENT ILLNESS: The patient has a long history of ulcerative colitis and depression. The patient actually was doing quite well until 06/05/2009. At that time, the patient became aware that he was not being paid for his work for some reason his salary was being held. He actually brings me copies of his pay stub showing that he was paid for almost nothing for 80 hours work and nothing for 29 hours of work. Since he was not getting paid, he could not afford to buy his prednisone and Purinethol or continue his treatments with this psychiatrist that he was seeing and for his depression and since that time his symptoms have flared up, now he is having diarrhea 5 to 6 times a day, which is bloody, abdominal pain and is feeling depressed.

PHYSICAL EXAMINATION: Revealing for a gentleman who appears to be somewhat uncomfortable. The abdominal examination reveals generalized tenderness without guarding.

ASSESSMENT: **Exacerbation of ulcerative colitis and depression secondary to loss of pay for reasons that are hard to understand. His paycheck shows he has worked, but he is not getting paid.**

PLAN: We will continue his disability until 09/05/2009. Hopefully at that time, he will either have found another job or he will be paid retrospectively for work that he has already performed. Paperwork is filed.

ER 436, 423, 424, 430—432 (emphasis added).

Due to the exacerbation of Mr. Nigro's ulcerative colitis during the time period of May 4, 2009 through June 5, 2009, caused by his loss of pay and benefits, Mr. Nigro made the following requests for accommodations to Sears' personnel, which were denied without any discussion:

8.

- In May of 2009, Larry Foerster denied Mr. Nigro's requests, made through his supervisor Jason Foss, for a later shift start time, and Foerster told Foss that Sears would no longer be providing that accommodation to Nigro. Moreover, Foerster denied this accommodation request without any discussions with Nigro, and despite the fact that this accommodation had been successful on 30 prior occasions. ER 188, 189, 214—218, 291, 292, 315—318, 354—356, 242, 187, 211—213;

- In May of 2009, Mr. Nigro asked Larry Foerster if he could be transferred to the position of Lead Merchandising/Pricing and Hardlines—a sales position not involving physical labor. Foerster denied the request without any explanation or discussion of alternative accommodations. ER 189, 282—286;

- Mr. Nigro's request in May of 2009 for a transfer to the Tool Lead position— a sales position not requiring physical labor—was denied by Foerster without any explanation or discussion of alternative accommodations. ER 189, 320—323, 342, 343; and

- In May of 2009, Mr. Nigro asked District Facilities Manager, Alan Kamisugi, for help with Nigro's failure to be paid and for a later shift start time. Kamisugi ignored these requests and told Mr. Nigro not to

worry about it because, per District General Manager Chris Adams, "you're not going to be here anymore." ER 189, 357, 358.

As a result of his loss of pay and benefits, and Sears' refusal to grant his requests for accommodation, all of which occurred in the time period between May 4, 2009 and June 5, 2009, Mr. Nigro had a severe flare-up of his ulcerative colitis, requiring a leave of absence that commenced on June 5, 2009. Mr. Nigro's leave was approved by his direct supervisor, Jason Foss, who was also the Store Operations Manager. ER 190, 195—197, 227—236, 335—337, 417, 423, 424, 430—432, 436, 437.

Jason Foss had the authority to grant Mr. Nigro's requests for accommodation, and granted Nigro's request for leave on June 5, 2009. ER 183, 206, 210, 259, 260, 227, 228. Shortly after Foss granted Nigro's request for leave on June 5, 2009, Mr. Foss was transferred from the Carlsbad store to the less desirable Escondido store, which was also a further drive from Mr. Foss' home. Foss considered the transfer to be a demotion. He did not ask for the transfer and was only informed on a Friday that he would be transferred to the Escondido store effective the following Monday. He was given no explanation for the transfer. Foss believes he was transferred as a retaliatory measure for helping Mr. Nigro try to resolve his pay issues and for granting Nigro's accommodation requests for a later shift start time. ER 191, 207—209, 219, 220, 228—229, 406—409.

10.

Once Mr. Nigro began his leave on June 5, 2009, he stayed in phone contact with Sears and advised as to his status. ER 190, 191, 196, 332—334, 347—349, 369, 383—387, 396—398, 438—441.

On June 29, 2009, Mr. Nigro had a telephone call with Store Manager Larry Foerster wherein Nigro informed Foerster that he was still on leave as a result of the severe flare-up of his ulcerative colitis caused by Sears' failure to pay him for time worked, which in turn deprived him of the money he needed to buy medications to keep his colitis under control. During this phone call, Nigro also asked Foerster for the accommodation of a change to his shift start time from 6:00 a.m. to 9:00 a.m., and explained that this would help him to get more sleep so that he could do his job. Finally, during this phone call Nigro told Foerster that if his pay was restored so that he could buy his medications, and if he was granted the accommodation of a 9:00 a.m. start time, then he believed he could return to work by July 25, 2009. ER 191, 192, 196, 350, 351. Foerster responded by stating:

> **" If you're going to stick with being sick, it's not helping your situation. It is what it is. You're not getting paid, and you're not going to be accommodated."**

ER 192, 196, 280, 281. At no time during the June 28, 2009 phone call did Foerster ask Mr. Nigro for a doctor's note or medical certification concerning his medical condition. ER 192, 196.

11.

As of July 13, 2009, Larry Foerster and Human Resources Lead Genevieve Petty were aware that Mr. Nigro had filed a disability claim with the California Employment Development Department. ER 193, 388—391, 399.

On July 24, 2009, Mr. Nigro received a letter from Larry Foerster dated July 23, 2009, wherein Foerster states Nigro will be terminated for "job abandonment" for being absent from work unless he provides Foerster with certification of his medical condition within 3 days of the date of the letter. Foerster did not include any certification forms in his letter for use by Nigro. ER 694, 699. However, Foerster knew exactly why Mr. Nigro had been absent from work. Nigro had explained this to Foerster during their June 29, 2009 telephone conversation wherein he told Foerster that he was absent from work due to the flare-up of his ulcerative colitis and that he could return to work by July 25, 2009 if his pay was restored and he was provided the accommodation of a later 9:00 a.m. start time. ER 191, 192, 196, 350, 351.

Foerster's July 23, 2009, letter was the first time Mr. Nigro received a request from Sears for medical certification with respect to his leave that commenced on June 5, 2009. ER 193, 196. The same day Mr. Nigro received the July 23, 2009, letter from Foerster (e.g. July 24, 2009), he provided Sears with medical certification documents by way of personal, hand delivery to Sears. ER 193, 338—341, 345, 346, 370—373, 438—441. One of the documents Mr. Nigro

hand delivered to Sears on July 24, 2009, along with the medical certification

documents, was his typed letter that states in pertinent part:

> I have not been paid for over two months all of my pay checks
> have been 0 dollars due to the illegal deductions made on the
> part of Sears.
>
> ...
>
> I have asked for several accommodations that have been flat
> out denied by management and completely ignored by Human
> Resources during my FMLA and upon my return to work.
>
> ...
>
> I was never asked to sit down with Human Resources to
> discuss any possible accommodations that may help my
> disability in any manner at all. Every attempt made to human
> resources on my part was meet [sic] with resistance and
> complete disregard to my requests and my well being as an
> employee.
>
> I have always been accommodated in the past and have done
> nothing wrong for any of this to happen to me. I have always
> been a good employee and done my job well.
>
> All these things that happened to me have caused me to
> become sick and my Ulcerative Colitis to come out of
> remission. I'm bleeding allot [sic] and suffering physically and
> mentally from not being able to buy my medication due to not
> being paid and the cancellation of my Medical Benefits. When
> all I did was ask for an accommodation and to be paid for the
> time I worked.
>
> I've been unable to receive treatments for the care I need to
> get my medical condition into remission as it was when I
> returned back to work on 5/4/09 from FMLA leave.

ER 338—341, 370, 371.

Jason Foss, who was Mr. Nigro's direct supervisor up to June 5, 2009,

prepared an email statement that summarizes the conduct he witnessed with respect

to Mr. Nigro, including Sears' failure to accommodate Nigro's medical condition and Sears' retaliation against Nigro due to his medical leaves and requests for accommodations.  ER 194, 255, 237—254.

### B.    Proceedings Below

On May 27, 2011, Mr. Nigro filed a complaint against Sears in the San Diego County Superior Court alleging three cause of action under California's Fair Employment and Housing Act, Cal. Gov. Code §12900 et seq. ("FEHA") for employment discrimination, failure to accommodate, and failure to engage in the interactive process, and a fourth cause of action for wrongful termination in violation of public policy. ER 858—866.

On  July 13, 2011, Sears removed the action to the United States District Court, Southern District of California. ER 771—846. On April 26, 2012, Sears filed a motion for summary judgment as to all causes of action in Nigro's complaint. ER 442—770.  On November 28, 2012, the district court granted Sears' motion for summary judgment as to all causes of action in Nigro's complaint. ER 2—17.

The district court entered judgment in favor of Sears on November 28, 2012. ER 1.  Mr. Nigro filed his Notice of Appeal on December 13, 2012. ER 18.

## SUMMARY OF ARGUMENT

The district court erred in grating summary judgment in favor of Sears on Mr. Nigro's discrimination claims because:

(1) after a series of successful accommodations for Mr. Nigro's medical condition, including job transfers, a change to his shift start time, and time off from work when necessary, Sears denied all further accommodation requests after May 4, 2009, and did so without any discussion of possible alternative accommodations. Thus, Sears is liable under Government Code §12940, subdivisions (m) and (n) for its failure to accommodate Nigro's disability and its failure to engage in the interactive process to determine possible accommodations; and

(2) Mr. Nigro was terminated by Sears for "job abandonment" as a result of absences caused by Nigro's disability and Sears' failure to accommodate Nigro's disability. As such, there is a direct causal link between Nigro's disability and his termination. Therefore, Sears is liable for wrongful termination. *Humphrey v. Mem'l Hosps. Ass'n,* 239 F.3d 1128, 1139 (9th Cir. 2001).

# ARGUMENT

## I.   STANDARD OF REVIEW

A decision granting summary judgment is reviewed de novo. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011); *McAlindin v. County of San Diego*, 192 F.3d 1226, 1232 (9th Cir.), amended 201 F.3d 1211, cert.den., 120 S.Ct. 2689 (2000). Viewing the evidence and drawing all inferences in the light most favorable to the non-moving party, the reviewing court must determine whether any genuine issues of material fact remain and whether the court correctly applied the relevant substantive law. *Bravo*, at 1083; see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). The court may not weigh evidence or make credibility determinations. If a rational trier of fact could resolve an issue of material fact in the nonmoving party's favor, the court "may not affirm a grant of summary judgment...because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009).

## II. THE COURT ERRED IN GRANTING SEARS' MOTION FOR SUMMARY JUDGMENT

### A. The Court Erred In Granting Summary Judgment On Nigro's First Cause Of Action—Failure To Accommodate

Mr. Nigro's first cause of action pleads the failure to accommodate in violation of Government Code §12940(m) of the Fair Employment and Housing Act ("FEHA"). ER 862, 863. The elements of a failure to accommodate claim are: (1) plaintiff has a disability under FEHA; (2) plaintiff is qualified to perform the essential functions of the position with or without reasonable accommodation; and (3) the employer failed to reasonably accommodate plaintiff's disability. *Green v. State of Calif.*, 42 Cal.4th 254, 267 (2007); *Scotch v. Art Institute of Calif.—Orange Co.*, 173 Cal.App.4th 986, 1009-1010 (2009). As explained, Mr. Nigro easily met these requirements and summary judgment should not have been granted.

First, it was undisputed that Mr. Nigro's medical condition of ulcerative colitis is a covered disability under FEHA. ER 184, 270, 412—414, 418—423. Both Sears and the district court agreed on this point. ER 13.

Second, Mr. Nigro presented evidence establishing that he was qualified to perform the essential functions of his maintenance position with or without reasonable accommodations. Accommodations under FEHA that qualify an employee to perform the essential functions of his position may include modified work schedules and/or a leave of absence when a leave of absence would permit

17.

the employee to perform the essential functions of his job upon his return to work. *Hanson v. Lucky Stores, Inc.,* 74 Cal.App.4[th] 215, 226 (1999); *Humphrey v. Mem'l Hosps. Ass'n.*, 239 F.3d 1128, 1135—1136 (9th Cir. 2001); *Surrell v. Cal. Water Serv. Co.,* 518 F.3d 1097, 1109 (9th Cir. 2008); Cal. Gov. C. §12926(o).

Although Mr. Nigro needed no work accommodations when his ulcerative colitis was in remission, when he experienced a mild flare-up of his condition that caused him to lose sleep at night, an accommodation than enabled him to go to work and do his job was to allow him a later shift start time. ER 185, 287—291, 293, 294, 344, 352, 353, 426, 427. Prior to May of 2009, Mr. Nigro successfully used this accommodation on approximately 30 occasions. ER 187, 211—213. When Mr. Nigro's ulcerative colitis became so severe that he could not work, a reasonable accommodation that enabled him to return to work without any restrictions was a leave of absence to heal and recuperate. ER 184, 424—426, 185, 428, 429, 186, 300—302, 359, 360, 306—309, 361—364.

The district court correctly concluded that Mr. Nigro established he was able to perform the essential functions of his position with or without accommodation. ER 8, 9. However, the district court determined that Mr. Nigro failed to establish the third element of his claim, to wit, that Sears failed to reasonably accommodate his disability. ER 13—15. As now explained, the district court erred.

The third element of Mr. Nigro's failure to accommodate claim requires a showing that Sears failed to reasonably accommodate Nigro's  disability. *Green*, *supra*,  42 Cal.4[th] at p. 267. "Once a reasonable accommodation has been granted, then the employer has a duty to provide that reasonable accommodation. (See §12940, subd. (m))." *A.M. v. Albertsons*, 178 Cal.App 4th 455, 464 (2009). Even a single failure to accommodate within a pattern of accommodations gives rise to liability under §12940(m). *Albertsons* at p. 465.

The district court determined that Mr. Nigro did not meet the third element of his claim. In coming to this conclusion, the district court cherry-picked evidence showing where Sears accommodated Nigro up through June 5, 2009, ignored the instances where Sears failed to accommodate Nigro's disability up through June 5, 2009, and completely ignored Sears' refusal to accommodate Nigro during the time period of June and July of 2009. ER 13—15. In short, the facts do not support the district court's conclusion.

Although Mr.  Nigro returned  to work from leave on May 4, 2009, without any work restrictions (ER 188, 315, 319, 354, 355), his ulcerative colitis quickly flared-up as a result of Sears' improper cancellation of his pay and medical benefits while he was on leave. ER 188, 190, 197, 335—337, 377—379, 380—382, 393, 394, 417, 423, 424, 430—432, 436, 437. As a result, when Mr. Nigro returned to work on May 4, 2009, he could not buy food, buy medications for his colitis, pay

rent, or support his minor daughter, all of which led to a severe flare-up of his ulcerative colitis in May of 2009. ER 190, 197, 417, 423, 424, 430—432, 436, 437, 335—337.

Due to the flare-up of his medical condition in May of 2009, Mr. Nigro made several accommodation requests to Sears, which were all denied without any discussion of alternative accommodations. In May of 2009, Mr. Nigro asked District Facilities Manager, Alan Kamisugi, for help with Nigro's failure to be paid and for a later shift start time. Kamisugi ignored these requests, without any discussion, and told Nigro not to worry about it because, per District General Manager Chris Adams, **"you're not going to be here anymore."** ER 189, 357, 358. In May of 2009, Mr. Nigro asked General Manager Larry Foerster if he could be transferred to the position of "Lead Merchandising/Pricing and Hardlines"—a sales position not involving physical labor. Foerster denied this request without any discussion. ER 189, 282—286. In May of 2009, Mr. Nigro requested a transfer to the "Tool Lead" position—a sales position not requiring physical labor, which was denied by Foerster without any discussion. ER 189, 320—323, 342, 343. Each one of these denials of accommodation gives rise to liability on the part of Sears, but this evidence was simply ignored by the district court. *Albertsons*, *supra*, 178 Cal.App.4[th] at p. 465. Moreover, these statements by Sears' high level supervisors are party admissions binding on Sears. F.R.E. §801(d)(2).

Finally, the district court discredits Nigro's evidence of Foerster's denial of Nigro's request for a later shift start time in May of 2009, on the basis that Nigro's direct supervisor, Jason Foss, was willing to grant this request, despite Foerster's direct order not to do so. ER 188, 189, 214—218, 291, 292, 315—318, 354—356, 242. The fact that Foss was willing to defy a direct order from Foerster does not devalue the fact that Foerster, who was the most senior supervisor at the Carlsbad store, chilled Mr. Nigro's exercise of his right to request this accommodation by decrying that it should not be granted. Foss' willingness to defy this direct order from Foerster does not absolve Sears of liability nor devalue this direct party admission from Foerster. F.R.E. §801(d)(2).

As long as an accommodation could have plausibly enabled a disabled employee to perform his job, an employer is liable for failing to attempt that accommodation. *Humphrey*, *supra*, 239 F.3d at p.1136. Once an employee makes a request for an accommodation, it is the employer's duty to discuss the request and explore other possible alternatives. The duty to accommodate is a continuing duty that is not exhausted by one effort. *Id*. at p. 1138. And, when an employer denies a request for accommodation, it has a duty to explore other options. *Id*.

Here, just looking at the time frame of May of 2009, the time period that was the narrow focus of the district court, Mr. Nigro made several requests for accommodation that could have plausibly enabled him to continue to perform his

job, and avoid the leave he commenced on June 5, 2009. These requests included a later shift start time, transfer to the position of Lead Merchandising/Pricing and Hardlines, transfer to the Tool Lead position, and help to resolve his failure to be paid, which pay issue caused Nigro to be unable to buy food or medications. Sears is liable for its failure to attempt each one of these accommodations, its failure to discuss these accommodations, and its failure to explore other options. *Humphrey*, *supra*, 239 F.3d at pp. 1136—1138.

Finally, in evaluating Mr. Nigro's failure to accommodate claim, the district court completely ignored what happened in the time period of June and July of 2009. As a result of his loss of pay, cancellation of medical benefits, and Sears' refusal to grant, let alone discuss, Nigro's requests for accommodation made in May of 2009, Mr. Nigro had a severe flare-up of his ulcerative colitis requiring a leave of absence that commenced on June 5, 2009, which leave was approved by his direct supervisor, Store Operations Manager, Jason Foss. ER 190, 195—197, 227—236, 335—337, 417, 423, 424, 430—432, 436, 437.

Once Mr. Nigro began his leave on June 5, 2009, he stayed in phone contact with Sears and advised as to his status. ER 190, 191, 196, 332—334, 347—349, 369, 383—387, 396—398, 438—441. On June 29, 2009, Mr. Nigro had a telephone call with Store Manager Larry Foerster. At this time, Nigro could no longer make accommodation requests to Store Operations Manager Jason Foss

22.

because Foss was transferred to a different store within a few days of granting Mr. Nigro's request for leave on June 5, 2009, and thus, was no longer Mr. Nigro's supervisor. ER 191, 207—209, 219, 220, 228, 229, 406—409.

During the June 29, 2009, telephone call between Mr. Nigro and Larry Foerster, Nigro informed Foerster that he was still on leave as a result of the severe flare-up of his ulcerative colitis, and asked Foerster to fix the problem with his pay and for the accommodation of a later shift start time. Nigro told Foerster that if his pay was restored (so he could buy medications) and he was allowed a later shift start time, he believed he could return to work by July 25, 2009. ER 191, 192, 196, 350, 351. Foerster responded to Mr. Nigro's accommodation requests stating:

> "If you're going to stick with being sick, it's not helping your situation. It is what it is. You're not getting paid, and you're not going to be accommodated." ER 192, 196, 280, 281.

Foester's statement is a direct party admission (F.R.E. §801(d)(2)), and shows that he simply flat out denied Mr. Nigro's accommodation requests. As such, Sears is liable for its failure to reasonably accommodate Mr. Nigro's disability. *Humphrey* at pp. 1138—1139; *Green*, *supra*, 42 Cal.4[th] at p. 267.

The district court discredits this admission by Foerster, as recounted in the sworn testimony of Mr. Nigro, as being "self-serving testimony and the intent ascribed to these statements by Nigro is speculative." ER 9. The district court is wrong for several reasons. First, by discrediting Mr. Nigro's sworn testimony, the

court improperly weighed the evidence in the context of a motion for summary judgment. This was an error. Determinations regarding credibility, the weighing of evidence, and the drawing of legitimate inferences are jury functions, and are not appropriate for resolution by the court on a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is the jury's function to hear Mr. Nigro's testimony concerning the statements Foerster made to him during the June 29, 2009, phone call, and give it the weight they deem appropriate. It was improper for the district court to usurp the jury's role here. *Id*. It is also important to point out that Larry Foerster denies making the statements attributed to him during the June 29, 2009, phone call, as he claims in his declaration. ER 694. Yet, the court does not characterize Foerster's declaration as "self-serving testimony," and ignores the fact that this conflict in testimony creates a disputed fact making summary judgment improper. *Nissan Fire Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The district court clearly applied a double standard here, improperly weighed the evidence, and did so in favor of Sears.

Second, the district court's characterization of Mr. Nigro's testimony, recounting Foerster's statements from the June 29, 2009 phone call, as "self-serving" (ER 9), shows that it committed error. As noted in *United States v. Shumway*, 199 F.3d 1093 (9th Cir. 1999), "[A]ll affidavits are "self-serving," and

24.

properly so "because otherwise there would be no point in [] submitting it. That an affidavit is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact." *Id*. at p. 1104. "Modern courts have recognized that all evidence proffered by a party is intended to be self-serving in the sense of supporting the party's position, and it cannot be discounted on that basis." *Oiye v. Fox*, 211 Cal.App.4[th] 1036, 1050 (2012). In the context of declarations opposing motions for summary judgment, the *Shumway* court instructs:

> When a respondent to a motion for summary judgment submits proper affidavits by individuals with personal knowledge and other cognizable and significantly probative evidence, such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor, the judge must treat that fact as genuinely at issue.

*Shumway* at pp. 1103—1104.

Based upon the foregoing rules, Mr. Nigro's testimony recounting his telephone call with Larry Foerster on June 5, 2009, wherein Foerster told Nigro, **" You're not getting paid, and you're not going to be accommodated,"** creates a triable issue of material fact prohibiting summary judgment. *Id*. The district court's discounting of this testimony as "self-serving" shows that it improperly weighed the evidence and committed error. Moreover, Foerster's statements, as recounted by Nigro, are party admissions on a significant issue in this case—Sears' illegal

25.

refusal to accommodate Nigro on June 29, 2009. F.R.E. §801(d)(2).The district court's further determination that Foerster's statement, **"[Y]ou're not going to be accommodated,"** is too "speculative" to be considered as evidence is perplexing. ER 9. Nigro questions what other inference could be drawn from this admission other than Sears' refusal to accommodate Nigro?

Finally on July 24, 2009, Mr. Nigro personally hand-delivered several documents to Sears' Carlsbad store,  including medical certification of his condition and a letter signed by Nigro recounting Sears' failure to accommodate him and the obvious continued need for the accommodations previously granted. ER 193, 338—341, 345, 346, 370—373, 438—441. Instead of reaching out to Mr. Nigro in response to the letter he hand-delivered on July 24, 2009 (ER 370, 371, 338—341), as the law required, Sears simply fired Nigro  for absenteeism without any discussion, let alone any discussion of accommodations.

In sum, the district court either ignored Mr. Nigro's evidence supporting his failure to accommodate claim or improperly weighed the evidence against Nigro. As now discussed, the district court made the same errors with respect to Mr. Nigro's claim of failure to engage in the interactive process.

**B.** **The Court Erred In Grating Summary Judgment On Nigro's Second Cause Of Action—Failure To Engage In The Interactive Process**

It is a violation of FEHA for an employer to fail to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations in response to a request for reasonable accommodation by an employee with a known medical condition. Gov. C. §12940(n). This is a separate claim independent from the claim of failure to accommodate under §12940(m). *Wysinger v. Automobile Club of So. Calif.*, 157 Cal.App.4th 413, 424 (2007). While FEHA requires the employee to initiate the interactive process, "no magic words are necessary, and the obligation [to accommodate] arises once the employer becomes aware of the need to consider an accommodation." *Scotch*, *supra*, 173 Cal.App.4th at p. 1014. And, once an employee makes a request for an accommodation, it is the employer's duty to discuss the request and explore other possible alternatives. *Humphrey*, *supra*, 239, F.3d at 1137.

Mr. Nigro's medical condition was well known to Sears. He disclosed it to Sears during the hiring process and to his direct supervisor, Jason Foss, shortly after being hired. ER 183, 184, 271—274. Chris Adams, Sears' District General Manager, was advised of Mr. Nigro's medical condition and the need for Nigro to take a leave of absence when necessary. ER 184, 404, 405. Likewise, when Larry

Foerster became General Manager at Sears' Carlsbad store, he knew Mr. Nigro had a medical condition that caused Nigro to be off work at times. ER 187, 259.

In May of 2009, despite a series of prior successful accommodations, the interactive process broke down on the part of Sears. When Mr. Nigro returned to work on May 4, 2009 after a successful leave accommodation, his medical benefits and pay had been erroneously cancelled by Sears. As a result, Mr. Nigro's ulcerative colitis came out of remission because he could not buy medications, buy food, or pay his rent. ER 188, 190, 197, 335—337, 377—379, 380—382, 393, 394, 417, 423, 424, 430—432, 436, 437.

Due to the flare-up of his medical condition in May of 2009, which was caused by Sears, Mr. Nigro made the following requests for accommodation triggering the interactive process over the period of May through July of 2009:

- **May 2009**- Nigro asks District Facilities Manager, Alan Kamisugi, for help to resolve the pay issue and for a later shift start time. Kamisugi ignored these requests and failed to discuss any alternative accommodations. ER 189, 357, 358. Therefore, Sears is liable for its failure to engage in the interactive process. Gov. C. §12940(n);

- **May 2009**- Nigro asks General Manager Larry Foerster for a transfer to the sales position of Lead Merchandising/Pricing and Hardlines. Foerster denies this accommodation request and fails to discuss any alternative

accommodations. ER 189, 282—286. Therefore, Sears is liable for its failure to engage in the interactive process. *Id*.;

- **May 2009**- Nigro requests a transfer to the sales position of Tool Lead. Foerster denies this accommodation request and fails to discuss any alternative accommodations. ER 189, 320—323, 342, 343. Therefore, Sears is liable for its failure to engage in the interactive process. *Id*.;

- **May 2009**- Nigro makes a request for a later shift start time. Foerster denies this request and tells Nigro's direct supervisor, Jason Foss, that Sears will no longer be making this accommodation for Nigro. There is no discussion with Nigro nor is there any discussion of alternative accommodations. ER 188, 189, 214—218, 291, 292, 315—318, 354—356, 242. Therefore, Sears is liable for its failure to engage in the interactive process. *Id*.

- **June 29, 2009**- While on leave due to the severe flare-up of his ulcerative colitis caused by Sears' improper failure to pay Nigro and the improper cancellation of his medical benefits, Nigro has a telephone call with Larry Foerster wherein Nigro tells Foerster that he was still on leave due to the severe flare-up of his medical condition, and asks Foerster to fix the problems with his pay and asks for a later shift start time accommodation. During this phone call, Nigro informs Foerster that if his pay is restored and

he is allowed a later shift start time, he believes he could return to work by
July 25, 2009. ER 191, 192, 196, 350, 351. Foerster responds stating:

> " If you're going to stick with being sick, it's not helping your
> situation. It is what it is. You're not getting paid, and you're
> not going to be accommodated."  ER 192, 196, 280, 281.

Therefore, Sears is liable for its failure to engage in the interactive process. *Id*.;
and

- **July 24, 2009**- While still on leave due to the severe flare-up of
  his medical condition, Nigro hand-delivers a signed letter to the
  Sears' Carlsbad  store, pointing out Sears' denial of his requests
  for accommodation when he returned to work from leave on May
  4, 2009. Nigro's letter states in part:

  > All these things that happened to me have caused me to
  > become sick and my Ulcerative Colitis to come out of
  > remission. I'm bleeding allot [sic] and suffering physically and
  > mentally from not being able to buy my medication due to not
  > being paid and the cancellation of my Medical Benefits. When
  > all I did was ask for an accommodation and to be paid for the
  > time I worked.

ER 193, 370—371, 338—341, 345—346, 370—373, 438—441.

No magic words are necessary from the employee to trigger the
employer's duty to engage in the interactive process to evaluate possible
accommodations. *Scotch*, *supra*, 173 Cal.App. 4th at p. 1014. Here, Mr. Nigro's
letter, quoted directly above, triggered the interactive process as he put Sears on

notice that he was still off from work due to the severe flare-up of his ulcerative colitis (caused by Sears' cancellation of his pay and benefits). Sears did not respond to Nigro's letter in any way, let alone engage in the interactive process to discuss possible accommodations for Nigro. Thus, Sears is liable for its failure to engage in the interactive process. Gov. C. §12940(n). In fact, the only response Mr. Nigro received from Sears was a notice of termination.

In sum, based on the foregoing, Sears is liable under Government Code §12940(n) for each of its failures to engage in the interactive process with Mr. Nigro during the time period of May through July of 2009. As now explained, Sears also discriminated against Nigro and wrongfully terminated Nigro in violation of Government Code §12940(a), because Sears terminated Nigro for absenteeism caused by his medical condition.

## C. The Court Erred In Granting Summary Judgment On Nigro's Third Cause Of Action – Discrimination/Wrongful Termination

### 1. <u>Discrimination</u>

Illegal discrimination includes, among other things, the failure of an employer to provide accommodations and/or the failure of an employer to engage in the interactive process to determine possible accommodations for an employee with a known physical disability. *Humphrey*, *supra*, 239, F.3d at p.1133.

As discussed above, Sears failed to accommodate Mr. Nigro's disability and failed to engage in the interactive process to determine possible accommodations for Mr. Nigro's disability during the time period of May through July of 2009. Thus, Mr. Nigro also proves his discrimination claim against Sears under Government Code §12940. *Id*.

### 2. <u>Wrongful Termination</u>

"Unlike a simple failure to accommodate claim, an unlawful discharge claim requires a showing that the employer terminated the employee because of his disability." *Humphrey*, *supra*, 239 F.3d at p. 1139. However, the claims are related in that the consequences of the failure to accommodate is frequently an unlawful termination. *Id*. Conduct resulting from a disability, such as absenteeism, "is considered to be part of the disability, rather than a separate basis for termination." *Id*. The Ninth Circuit explains this concept in *Humphrey* stating: "The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability." *Id*.

Here, the district court concluded that Mr. Nigro did not show a link between his disability and termination. On this point the district court states:

> Even if Nigro could make out a prima facie case, Sears had a legitimate, non-discriminatory reason for terminating his employment: failure to comply with Sears' attendance and leave policies resulting in job abandonment.

32.

...

> In sum, Sears has provided a legitimate reason for Nigro's termination and Nigro has provided no evidence that his failure to comply with the company's attendance and leave policies was just a pretext to terminate his employment because of his disability. (ER 10, 12)

As now explained, the district court is correct that Mr. Nigro was terminated by Sears for "job abandonment" resulting from absenteeism, but misses the obvious link between Nigro's absenteeism and termination: Nigro's absenteeism was directly caused by Sears' failure to accommodate his disability in the time period of May through July of 2009. As such, Sears' termination of Mr. Nigro for job abandonment caused by his absenteeism was not a legitimate, non-discriminatory reason for termination because Nigro's absenteeism was conduct resulting directly from his disability and Sears' failure to accommodate his disability. The district court simply missed the forest for the trees on this issue. The *Humphrey* case illustrates this point on facts very similar to this case.

In *Humphrey v. Memorial Hosps. Assn.*, 239 F.3d 1128 (9th Cir. 2001), the plaintiff, like Mr. Nigro here, sued her employer under FEHA for failure to accommodate her disability and for wrongful termination. The plaintiff in *Humphrey*, a medical transcriptionist, had OCD and engaged in a series of obsessive rituals before leaving for work each morning that made her increasingly late for work or not show up at all. This caused her to receive escalated disciplinary

actions for violating the company's policies on tardiness and absenteeism, which included discipline for not calling in at all, resulting in unreported absences. *Id*. at pp.1130—1131.

In *Humphrey*, the company initially engaged in the interactive process with plaintiff, and as a result, provided her with the accommodation of a flexible start time. *Id*. at p. 1131. Similarly here, Sears provided Nigro with a flexible start time as an accommodation up until May of 2009. In *Humphrey*, when plaintiff's OCD became more severe, she asked for a new accommodation of working from home like other transcriptionists were allowed to do. *Id*. at p. 1131. The company denied this accommodation due to plaintiff's disciplinary warnings for tardiness and absenteeism, and did so without discussing any alternative accommodations. *Id.* at p. 1132. Plaintiff was absent two more times and then fired for violating the company's written policies on tardiness and absenteeism. *Id*. at p.1133. Plaintiff sued the company for violations of the ADA and FEHA. Plaintiff's FEHA claims included the failure to accommodate, the failure to engage in the interactive process, and wrongful termination. *Id*. at p. 1133. The district court granted summary judgment in favor of the company and the Ninth Circuit reversed. *Id*. at p. 1130. Because the FEHA provisions concerning disability discrimination are based upon the ADA, the Court in *Humphrey* analyzed plaintiff's ADA and FEHA claims together. *Id.* at p. 1133, fn. 6.

34.

The company in *Humphrey* argued that plaintiff's inability to show up for work and failure to notify her employer when she would be absent from work rendered her unqualified under the ADA and FEH because regular and predictable attendance is an essential function of the position. The Court rejected this argument reasoning that plaintiff could perform the essential functions of her job with either of two potential reasonable accommodations: "granting her a leave of absence or allowing her to become a 'home-based transcriptionist.'" *Id*. at p. 1135. The Court went on to hold that it would be inconsistent with the purpose of the anti-discrimination laws to allow an employer to deny accommodations requested by an employee because the employee violated the employer's tardiness and absenteeism policies as a result of having a disability. *Id*. at p. 1137. In other words, an employer's written policies or directives do not trump FEHA or the ADA where an employee's violations of such policies are the result of the employee's disability. *Id*. Then, applying this rule to plaintiff's wrongful termination claim, the *Humphrey* decision states: "The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability. *Id*. at p. 1140.

Based upon this reasoning, the Court in *Humphrey* reversed summary judgment on plaintiff's wrongful termination claim holding that plaintiff

"presented sufficient evidence to create a triable issue of fact as to whether her attendance problems were caused by OCD. In sum, a jury could reasonably find the requisite causal link between a disability of OCD and Humphrey's absenteeism and conclude that MHA fired Humphrey because of her disability." *Id*. at p. 1140; see also *Kimbro v. Atlantic Richfield Co*., 889 F.2d 869, 875 (9th Cir. 1989) [finding sufficient causal connection between the employee's disability and termination where the employee was fired for excessive absenteeism caused by migraine-related absences].

In the present case, as in *Humphrey*, Mr. Nigro presented sufficient evidence to create a triable issue of fact as to whether his attendance problems in June and July of 2009, which resulted in his termination for "job abandonment," were caused by his ulcerative colitis. Mr. Nigro submits that it is undisputed that his absences, which led to his termination for job abandonment, were directly caused by his ulcerative colitis. As discussed in detail above, Nigro went on leave on June 5, 2009, due to a severe flare-up of his ulcerative colitis caused by Sears' cancellation of his pay and medical benefits, and failure to grant, let alone discuss, his various requests for accommodation made in May of 2009. ER 188, 190, 195—197, 335—337, 377—379, 380—382, 393—394, 417, 423—424, 430—432, 436—437, 189, 357—358, 282—286, 320—323, 342-343, 214—218, 291—292, 315-318, 354—356, 242, 227—236. While Mr. Nigro was absent from work in

36.

June and July of 2009, he advised Sears that he was absent due to his ulcerative colitis, and continued to request accommodations in the form of the restoration of his pay and benefits, and a later shift start time, all of which were denied by Sears. ER 190, 191, 192, 196, 332—334, 347—349, 369, 383—387, 396—398, 438—441, 350, 351, 280, 281, 193, 338—341, 345—346, 370—373, 438—441. Notwithstanding this knowledge on the part of Sears, Mr. Nigro was terminated for "job abandonment" based upon being absent from work as a result of the flare-up of his ulcerative colitis. Based upon this evidence, and all inferences that must be drawn from it in Mr. Nigro's favor, a jury could reasonably find the requisite causal link between Mr. Nigro's disability of ulcerative colitis and his absenteeism, and conclude that Sears fired Nigro for job abandonment because of his disability. *Humphrey* at pp. 1139—1140. As such, the district court erred in granting summary judgment on Nigro's wrongful termination claim.

**D. The Court Erred In Granting Summary Judgment On Nigro's Fourth Cause Of Action—Wrongful Termination In Violation Of Public Policy**

Mr. Nigro also asserts a claim for wrongful termination in violation of public policy. ER 865. The district court granted summary judgment on this claim based upon its erroneous granting of summary judgment on the other claims. ER 17.

To establish a claim for wrongful termination in violation of public policy under California law, the plaintiff must show: (1) the existence of a public policy

and (2) a nexus between the public policy and the termination of plaintiff's employment. *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1253 (1994). And, disability discrimination can be the basis of a claim for wrongful termination in violation of public policy. *City of Moorpark v. Sup.Ct.*, 18 Cal.4th 1143, 1161 (1998).

As set forth above, Mr. Nigro established his FEHA claim for wrongful termination based upon his disability. Thus, he also established his claim for wrongful termination in violation of public policy. *Id*. The district court's determination to the contrary is error and must be reversed.

## CONCLUSION

For all of the foregoing reasons, the district court erred in granting summary judgment in favor of Sears. Therefore, Appellant requests that the judgment be reversed.


Dated: April 22, 2013                    LAW OFFICES OF KIRK D. HANSON

                                         /s/ Kirk D. Hanson
                                         Attorneys for Plaintiff and Appellant
                                         Anthony V. Nigro

**STATEMENT OF RELATED CASES**

Plaintiff/Appellant is not aware of any related cases pending in this Court.

**CERTIFICATION OF COMPLIANCE**

Pursuant to Fed.R.App.P. 32(a)(7)(c) and the Ninth Circuit Rule 32-1, this opening brief is proportionally spaced, has a typeface of 14 points and contains approximately 8994 words.

/s/ Kirk D. Hanson

# CERTIFICATE OF SERVICE

9TH Circuit Case No. U.S.C.A. Docket No. 12-56055

I hereby certify that I electronically filed the foregoing Appellant's Opening Brief along with Appellant's Excerpts of Record (Volumes 1 through 5; pages 0001—0871) with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 22, 2013. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: April 22, 2013                                    /s/ Gabriela Gonzalez