No. 12-57262
(District Court Case No. 3:11-cv01541-MMA-JMA)

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

ANTHONY V. NIGRO,

Plaintiff-Appellant,

v.

SEARS, ROEBUCK AND CO.,

Defendant-Appellee.

On Appeal from the
United States District Court for the
Southern District of California

---

APPELLEE SEARS, ROEBUCK AND CO.'S
ANSWERING BRIEF

---

Jody A. Landry
Caryn M. Anderson
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101-3577
619.232.0441
jlandry@littler.com
cmanderson@littler.com
**Attorneys for Defendant-Appellee
SEARS, ROEBUCK AND CO.**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Defendant-Appellee Sears, Roebuck and Co. discloses that its parent company is Sears Holdings Corporation. Sears Holdings Corporation is a publicly held corporation and owns 100 percent of the stock of Sears, Roebuck and Co.

Dated: May 23, 2013                      /s/ Caryn M. Anderson
                                         CARYN M. ANDERSON

TABLE OF CONTENTS

PAGE

I.    INTRODUCTION .................................................................1

II.   JURISDICTIONAL STATEMENT ....................................2

III.  STATEMENT OF ISSUES ....................................................2

IV.   PRIMARY AUTHORITY ......................................................3

V.    STATEMENT OF UNDISPUTED FACTS.........................10

      A.    Nigro Contends He Suffers from Ulcerative Colitis, Which
            Often Left Him Unable to Work in Any Capacity, for Months at
            a Time ........................................................................10

      B.    Sears Accommodated Nigro by Providing Him with a Later
            Start Time as Needed, Two Alternate Positions (Both of Which
            He Relinquished Voluntarily), and Lengthy Medical Leaves............11

      C.    After Nigro Returned from His Second Lengthy Medical Leave,
            Sears Continued to Accommodate Him ............................14

      D.    On June 5, 2009, Nigro Stopped Coming to Work, for Good ..........16

      E.    Nigro Was Terminated for Job Abandonment on August 5,
            2009 ........................................................................19

VI.   SUMMARY OF ARGUMENT ................................................22

      A.    Standard of Review ........................................................22

      B.    The Absence of a Genuine Issue of Material Fact Warrants the
            Grant of Summary Judgment in the Moving Party's Favor...............22

      C.    Since Sears Accommodated Nigro's Alleged Disability,
            Summary Judgment Should Be Affirmed in Sears' Favor on the
            Claim for Failure to Accommodate under FEHA ..............................23

D.    Since Sears Not Only Engaged in the Interactive Process, but Nigro Caused Any Breakdown, Summary Judgment Should Be Affirmed in Sears' Favor on the Failure to Engage in the Interactive Process Claim ..................................................25

E.    Summary Judgment Should Be Affirmed on the Disability Discrimination Claim Because Nigro Cannot Prove Discriminatory Animus, an Essential Element of His Claim, and He Concedes That Sears Terminated His Employment for a Legitimate, Nondiscriminatory Reason, Without Pretext .................26

F.    The Wrongful Termination in Violation of Public Policy Claim Was Properly Adjudicated in Sears' Favor Because of the Absence of an Underlying Public Policy Violation ..........................28

G.    As to All Claims, Summary Judgment in Sears' Favor Should Be Affirmed for the Additional Reason That Nigro Is Not a Qualified Individual with a Disability under FEHA .........................29

VII.  ARGUMENT ..................................................................................30

A.    Summary Judgment Should Be Granted Whenever There Is No Genuine Issue of Material Fact ............................................................30

B.    Summary Judgment Was Properly Entered for Sears on the Failure to Accommodate Claim ........................................................32

      1.    Sears Accommodated Nigro's Alleged Disability and Was Not Required to Transfer Him to Another Position .......32

      2.    The Alleged June 29, 2009, Statement by Foerster Is Immaterial ..............................................................................36

C.    The Claim for Failure to Engage in the Interactive Process Was Properly Adjudicated in Sears' Favor Because Sears Not Only Complied with the Law, but Nigro Unilaterally Ended the Process ..............................................................................................37

TABLE OF CONTENTS
(CONTINUED)

PAGE

1.  Sears Not Only Engaged in the Interactive Process with Nigro, But It Also Accommodated Him .................................. 38

2.  Because Nigro by His Own Conduct Ended the Interactive Process in Late July 2009, Sears Is Not Liable for Any Breakdown ................................................................ 39

D.  Summary Judgment Was Properly Entered for Sears on the Disability Discrimination Claim Because Nigro Cannot Prove Discriminatory Intent, and Sears Had a Legitimate, Nondiscriminatory Reason for Terminating Nigro ........................... 41

1.  Nigro Cannot Prove Discriminatory Intent, Which Is An Essential Element of His *Prima Facie* Case of Disability Discrimination .................................................................. 42

2.  Sears Has a Legitimate, Nondiscriminatory Reason for Terminating Nigro's Employment ........................................... 44

3.  Nigro Does Not Challenge the District Court's Finding That Sears' Reason for Terminating Him Was Not a Pretext for Discrimination, Thereby Waiving the Issue ......... 46

E.  Nigro's Common Law Wrongful Termination Claim Fails Because of the Absence of an Underlying Public Policy Violation ........................................................................................... 47

F.  An Independent, Alternative Ground for Affirming the Judgment on All Claims Is Nigro's Inability to Meet His Burden of Proving He Was a Qualified Individual with a Disability ........................................................................................ 48

VIII.  CONCLUSION ............................................................................. 52

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.M. v. Albertson's,*
 178 Cal.App.4th 455 (2009) .......................................................................24, 35

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986)..............................................................................32, 37

*Avila v. Continental Airlines, Inc.,*
 165 Cal.App.4th 1237 (2008) ..............................................................26, 41, 42

*Barnett v. U.S. Air, Inc.,*
 228 F.3d 1105 (9th Cir. 2000), *vacated on other grounds*, *U.S. Airways,*
 *Inc., v. Barnett*, 535 U.S. 391 (2002)...............................................25, 26, 39, 40

*Brundage v. Hahn,*
 57 Cal.App.4th 228 (1997) .................................................................49

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986)...........................................................................22, 30, 31

*City of Moorpark v. Superior Court,*
 18 Cal.4th 1143 (1998) ......................................................................28, 47

*Day v. Sears Holdings Corp.,*
 2013 U.S. Dist. LEXIS 41052 (C.D. Cal. March 13, 2013)..............................46

*Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.,*
 642 F.3d 728 (9th Cir. 2011) ..........................................................26, 37, 40, 41

*Dumas v. New United Motor Mfg., Inc.,*
 305 Fed.Appx. 445 (9th Cir. 2008)...................................................46

*E.E.O.C. v. Yellow Freight Systems, Inc.,*
 253 F.3d 943 (7th Cir. 2001) ..........................................................50

*Green v. State of California,*
 42 Cal.4th 254 (2007) ...................................................................29, 42, 48, 51

# <u>TABLE OF AUTHORITIES</u>

Page(s)

*Guz v. Bechtel Nat'l, Inc.*,
  24 Cal.4th 317 (2000) ................................................................passim

*Humphrey v. Memorial Hosp. Ass'n*,
  239 F.3d 1128 (9th Cir. 2011) .......................................27, 43, 44, 45

*Keenan v. Allan*,
  91 F.3d 1275 (9th Cir. 1996) ........................................................22, 31

*King v. United Parcel Service, Inc.*,
  152 Cal.App.4th 426 (2007) ...........................................25, 33, 37, 38

*Nadaf-Rahrov v. Neiman Marcus Group, Inc.*,
  166 Cal.App.4th 952 (2008) .............................................29, 48, 51

*Raine v. City of Burbank*,
  135 Cal.App.4th 1215 (2006) .........................................24, 33, 34, 35

*Recinto v. United States Dep't of Veterans Affairs*,
  706 F.3d 1171 (9th Cir. 2013) ........................................26, 28, 42, 46

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133 (2000)........................................................28, 44, 46

*Samper v. Providence St. Vincent Med. Ctr.*,
  675 F.3d 1233 (9th Cir. 2012) ................................................passim

*Scosche Industries, Inc. v. Visor Gear Inc.*,
  121 F.3d 675 (9th Cir. 1997) ...........................................................33

*Silo v. CHW Med. Foundation*,
  27 Cal.4th 1097 (2002) ...........................................................28, 47

*Spitzer v. The Good Guys, Inc.*,
  80 Cal.App.4th 1376 (2000) ...........................................25, 33, 37, 38

*Swirsky v. Carey*,
  376 F.3d 841 (9th Cir. 2004) ...........................................................13

*Thornhill Publishing Co., Inc. v. GTE Corp.*,
  594 F.2d 730 (9th Cir. 1979) ........................................................23, 31

# TABLE OF AUTHORITIES

Page(s)

*Turner v. Anheuser-Busch, Inc.,*
  7 Cal.4th 1238 (1994) .......................................................................28, 47

*United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.,*
  555 F.3d 772 (9th Cir. 2009) .......................................................22, 48

*United States v. Kama,*
  394 F.3d 1236 (9th Cir. 2005) ..........................................27, 28, 42, 46

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
  865 F.2d 1539 (9th Cir. 1989) .....................................................23, 31

*Valdez v. Rosenbaum,*
  302 F.3d 1039 (9th Cir. 2002) .....................................................22, 48

*Van Asdale v. Int'l Game Tech.,*
  577 F.3d 989 (9th Cir. 2009) ..............................................................34

*Waggoner v. Olin Corp.,*
  169 F.3d 481 (7th Cir. 1999) ..............................................................49

*Wilson v. County of Orange,*
  169 Cal.App.4th 1185 (2009) .....................................................23, 32

## STATUTES

Cal. Code Regs. tit. 2, § 7293.9(a)(2) .........................................6, 23, 35

Cal. Gov. Code § 12926(o) .................................................4, 23, 34, 35

Cal. Gov. Code § 12940.......................... 4, 23, 25, 29, 32, 33, 37, 42, 48

## OTHER AUTHORITIES

Fed. R. Civ. Proc. 56................................................1, 7, 9, 22, 30, 31

Fed. R. Evid. 801 .........................................................................13, 16

Fed. R. Evid. 802 .........................................................................13, 16

## I.    INTRODUCTION

Defendant-Appellee Sears, Roebuck and Co. ("Sears") obtained summary judgment in its favor on all claims asserted by Plaintiff-Appellant Anthony V. Nigro ("Nigro") in this meritless action.  As the moving, opposing, and reply papers filed in the district court establish, and as further demonstrated in this appeal, under the undisputed facts and law, no genuine issue of material fact remains for trial.  Fed. R. Civ. Proc. 56(c).  Sears accommodated Nigro's alleged disability – ulcerative colitis, a chronic, debilitating ailment – by providing him leaves of absence and time off work, a later start time when needed, and transfers to other positions from which Nigro subsequently resigned.  Despite Sears' efforts, Nigro remained unable to perform the essential functions of his position, which required him to be physically present at work to perform his job.  Eventually, Nigro stopped coming to work altogether and rebuffed Sears' efforts to engage in a dialogue with him about his condition.  Nigro was ultimately terminated for job abandonment after he refused to speak to his store manager about his situation and wrote an e-mail to the district manager requesting that he be terminated.

Sears complied with its obligations under the California Fair Employment and Housing Act ("FEHA") and did not discriminate against Nigro on account of his alleged disability.  Nigro cannot prove otherwise.  This action has no merit, and

the district court's order granting summary judgment, and the resulting Judgment entered in Sears' favor against Nigro, should be affirmed.

## II.    JURISDICTIONAL STATEMENT

Sears is in agreement with Nigro's statement in the Opening Brief of the jurisdiction of the district court and this Court in this action.  Circuit Rule 28-2.2.

## III.    STATEMENT OF ISSUES

The subject appeal presents the fundamental issue of whether the district court's order granting Sears' motion for summary judgment should be affirmed as to any or all claims for relief, following *de novo* review, on any ground supported in the record, whether or not relied upon by the district court, because there is no genuine issue of material fact.  Specifically, the following issues are presented:

1.    On the claim for failure to accommodate under FEHA, whether Sears reasonably accommodated Nigro's alleged disability in his existing position during the time period at issue, May 4 – August 5, 2009, and whether Sears was required to grant Nigro's alleged requests for a transfer as an accommodation;

2.    On the claim for failure to engage in the interactive process under FEHA, whether Sears engaged in the interactive process with Nigro during the period at issue, May 4 – August 5, 2009, and whether Nigro himself caused any breakdown in the process, thus precluding his recovery on this claim;

3.     On the claim for alleged disability discrimination under FEHA, whether Nigro is not only unable to prove discriminatory animus, which is an essential element of his *prima facie* case, but whether the failure to address in Appellant's Opening Brief ("AOB") the district court's ruling on this issue has resulted in a waiver of the issue on appeal;

4.     Alternatively, whether there is no genuine issue of material fact on Nigro's disability discrimination claim because Nigro concedes Sears had a legitimate, non-discriminatory reason for terminating his employment, and Nigro does not argue in the AOB that this reason was a pretext for discrimination, thereby waiving any contrary contention;

5.     On the wrongful termination in violation of public policy claim, whether Nigro's claim fails because he cannot establish the requisite underlying public policy violation, which is an essential element of this claim; and

6.     As to all claims, on a ground fully briefed in but rejected by the district court, whether Nigro cannot establish an essential element of his *prima facie* case: that he is a qualified individual with a disability under FEHA.

## IV.   PRIMARY AUTHORITY

The following pertinent statutes, regulations, and rules are at issue in this Brief:

1.    **California Fair Employment and Housing Act:**

a.    Cal. Gov. Code § 12926(o)(2) (formerly subd. (n)(2)) –
"Reasonable accommodation" may include either of the following:

. . .

Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

b.    Cal. Gov. Code § 12940 –

It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

(a)    For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to

4

employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

(1)    This part does not prohibit an employer from refusing to hire or discharging an employee with a physical or mental disability, or subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee with a physical or mental disability, where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations.

(2)    This part does not prohibit an employer from refusing to hire or discharging an employee who, because of the employee's medical condition, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger the employee's health or safety or the health or safety of others even with reasonable accommodations. Nothing in this part shall subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee who, because of the employee's medical condition, is unable to perform his or her essential duties, or cannot perform those duties in a manner that would not

endanger the employee's health or safety or the health or safety of others even with reasonable accommodations.

. . .

(m)   For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Nothing in this subdivision or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship, as defined in subdivision (t) of Section 12926, to its operation.

(n)   For an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition.

## 2.   California Code of Regulations, Title 2, Division 4 (Cal. Code Regs. tit. 2, § 7293.9(a)(2)[1]:

Any employer or other covered entity shall make reasonable accommodation to the disability of any individual with a disability if the employer or other covered

---

[1] This regulation was recently amended.  This text is that in effect during Nigro's employment and when the district court decided the summary judgment motion.

entity knows of the disability, unless the employer or other covered entity can demonstrate that the accommodation would impose an undue hardship.

(a)     Examples   of   Reasonable   Accommodation.      Reasonable accommodation may, but does not necessarily, include, nor is it limited to, such measures as:

. . .

(2)     Job   restructuring.      Job   restructuring,   reassignment   to   a   vacant position, part-time or modified work schedules, acquisition or modification of equipment or devices, adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar actions.

### 3.     <u>Fed. R. Civ. Proc. 56</u>:

(a)     Motion for Summary Judgment or Partial Summary Judgment.   A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b)     Time to File a Motion.  Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c)     Procedures.

(1)     *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A)     citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B)     showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2)     *Objection That a Fact Is Not Supported by Admissible Evidence*. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3)     *Materials Not Cited*. The court need consider only the cited materials, but it may consider other materials in the record.

(4)     *Affidavits or Declarations*. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that

8

would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d)     When Facts Are Unavailable to the Nonmovant.   If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)     defer considering the motion or deny it;

(2)     allow time to obtain affidavits or declarations or to take discovery; or

(3)     issue any other appropriate order.

(e)     Failing to Properly Support or Address a Fact.   If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1)     give an opportunity to properly support or address the fact;

(2)     consider the fact undisputed for purposes of the motion;

(3)     grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

(4)     issue any other appropriate order.

(f)     Judgment Independent of the Motion.   After giving notice and a reasonable time to respond, the court may:

9

      (1)     grant summary judgment for a nonmovant;

      (2)     grant the motion on grounds not raised by a party; or

      (3)     consider summary judgment on its own after identifying for the

parties material facts that may not be genuinely in dispute.

      (g)    Failing to Grant All the Requested Relief.  If the court does not grant

all the relief requested by the motion, it may enter an order stating any material

fact--including an item of damages or other relief--that is not genuinely in dispute

and treating the fact as established in the case.

      (h)    Affidavit or Declaration Submitted in Bad Faith.  If satisfied that an

affidavit or declaration under this rule is submitted in bad faith or solely for delay,

the court--after notice and a reasonable time to respond--may order the submitting

party to pay the other party the reasonable expenses, including attorney's fees, it

incurred as a result. An offending party or attorney may also be held in contempt

or subjected to other appropriate sanctions.

## V.    STATEMENT OF UNDISPUTED FACTS

### A.    Nigro Contends He Suffers from Ulcerative Colitis, Which Often Left Him Unable to Work in Any Capacity, for Months at a Time.

At all relevant times, Nigro contends he has suffered from ulcerative colitis,

an inflammation of the bowel which causes bleeding, pain, diarrhea, and frequent

bowel movements. The condition has no cure. (ER[2] 422 – 423; 545:23 – 546:3; 824, ¶ 7.) Nigro has chronic, ulcerative colitis with frequent, extreme flares, which (both before and during his employment with Sears), left him incapacitated and completely unable to work. (ER 270:6-17; 418:23 – 419:23; 760 – 761.)

**B.    Sears Accommodated Nigro by Providing Him with a Later Start Time as Needed, Two Alternate Positions (Both of Which He Relinquished Voluntarily), and Lengthy Medical Leaves.**

In May 2007, Nigro started his employment at Sears working in the Carlsbad store as a Quality Maintenance Assistant ("QMA"). (ER 501:19-22; 519:13-521:2; 534:19-24.) Sears considers regular and timely attendance an essential function of the QMA position, as well as all other hourly positions. (ER 741; 763, ¶ 3; 768; 701, ¶ 7.) Nigro knew that Sears considered regular and timely attendance an essential job function when he started working for Sears. (ER 502:18 – 504:8; 603:13.) Additionally, the written QMA job description required Nigro to be on-site at the store to conduct interior and exterior building maintenance. (ER 516:1-13; 519:13-24; 614 – 615; 678:15-18; 683:14-17.) Nigro testified that his job duties included physically demanding tasks, such as removing and replacing floor tiles, changing filters in ten rooftop air conditioning units, climbing ladders, and heavy lifting. (ER 542:21 – 543:20.)

---

[2] The abbreviation "ER" throughout this brief refers to Appellant's Excerpts of Record, filed April 22, 2013.

In August 2007, at his request, Nigro received a promotion to field Quality Maintenance Technician ("QMT"), which required him to travel locally between stores. (ER 505:22 – 506:6; 507:23 – 508:21; 516:1-25; 517:20-22; 518:7-13; 519:13-521:2; 537:3-17; 612 – 613.) Nigro remained in this position for only a few months, as he contends his ulcerative colitis worsened, making travel difficult, since he needed to be near a restroom at all times. Thus, Nigro requested and received a transfer back to his QMA position in Carlsbad in December 2007. (ER 538:15 – 539:5; 540:3-7.)

After he transferred back to the QMA position, Nigro asked his supervisor, Jason Foss, if he could sometimes come in to work later than his scheduled start time because he occasionally had problems sleeping due to his ulcerative colitis. Foss agreed and allowed Nigro to change his shift start time to a later time on an as-needed basis. Although Nigro claims this was the only accommodation he needed at the time, Foss also testified that he allowed Nigro to change his days of work when he was not feeling well. (ER 535:22 – 536:3; 639:3-12; 640:5-8; 642:8-17.)

According to Nigro, despite these accommodations, he started to notice that the physical labor required in the QMA position exacerbated his symptoms. He contends that sometime in early 2008, he spoke with Foss about transferring to a warehouse position because Nigro thought that position would require less

12

physical labor. Ultimately, Sears selected an employee with warehouse experience – which Nigro did not have – for the position. (ER 540:14 – 541: 13; 547:15 – 548:5; 657:1-15.)

In March 2008, Nigro went out on his first lengthy medical leave of absence. Nigro submitted a form completed by his treating physician entitled "California Leave Medical Certification Form: Associate's Own Condition," which provided details regarding Nigro's condition and the expected term of incapacitation. (ER 548:9 – 549:10; 625 – 626.) Nigro was on an approved medical leave of absence for at least three months. At the end of his leave, Nigro returned to work in the QMA position. (ER 540:4-11; 549:6-10; 625 – 626.)

In December 2008, Sears promoted Nigro to the lead position in the Auto Center, for which Nigro had applied and interviewed. After only a few days in this position, Nigro voluntarily relinquished it. He contends that he did so because his new boss, Bill Dailey, was grumbling about not getting to interview Nigro, Nigro was not his first choice for the position, and Nigro could not do the job because of his medical condition.[3] (ER 509:25 – 510:3; 551:3 – 552:14.)

---

[3] The alleged statements Nigro attributes to Dailey are inadmissible hearsay, as Nigro did not hear them directly from Dailey. (ER 511:19 – 513:6.) Fed. R. Evid. 801 & 802. Sears references them here for a non-hearsay purpose only – as evidence of Nigro's stated reason for stepping down from the lead position in the Auto Center – and not for the truth of the matter asserted. Fed. R. Evid. 801(c); *Swirsky v. Carey*, 376 F.3d 841, 852 (9th Cir. 2004).

On December 27, 2008, Nigro took another leave of absence. Nigro's symptoms from his ulcerative colitis were so severe at the time that he informed Genevieve Petty, his Human Resources lead, that he was not sure if he would ever be able to return to work. (ER 523:24-524:3; 554:22-25; 662:8-22.) As with his leave earlier in 2008, Nigro submitted a completed "California Leave Medical Certification Form: Associate's Own Condition" form, in which his physician provided details regarding Nigro's condition and his expected return to work date. (ER 361 – 364.)

On January 23, 2009, Sears' corporate Human Resources hotline, referred to as "88Sears," informed Petty that Nigro was not eligible for FMLA leave. Because Nigro was not receiving short-term disability payments, his insurance premiums were not paid out of his paycheck and were canceled for a time. Petty tried to help Nigro by issuing him several pay advances. Nevertheless, the issues with Nigro's pay and benefits were complicated and remained unresolved. (ER 563:3 – 564:11; 701, ¶¶ 3 & 4; 707; 712.) When Nigro returned from leave on May 4, 2009, he experienced additional issues with his pay. (ER 561:23 – 562:11.)

### C. After Nigro Returned from His Second Lengthy Medical Leave, Sears Continued to Accommodate Him.

At the conclusion of his second medical leave, which lasted over four (4) months, Nigro returned to work and submitted a note from his physician releasing him to return to "full work duty," with no restrictions, on May 4, 2009. (ER 555:8

– 556:13; 687; 691; 763; 766.)  Although his doctor identified no restrictions of any kind, Nigro contends he still needed to change his shift start time from 6:00 a.m. to 9:00 a.m. on any day when he experienced flare-ups.  (ER 557:22 – 558:3.) However, Nigro never requested a note from his doctor indicating he needed a later start time, nor did he present any other doctor's note to Sears prior to July 24, 2009.  (ER 317:25 – 318:3; 528:24 – 529:23; 604:21-24; 694, ¶ 3; 699.)

Even though Nigro did not present a doctor's note, Foss, who remained his direct supervisor until mid-June 2009, said he would continue to allow Nigro to have a later start time, as needed.  Nigro contends that Larry Foerster, who was not his direct supervisor at the time but was the new store manager when Nigro returned from leave, allegedly said that Foss could not allow Nigro to have a later start time.  In any event, Foss not only told Nigro he would allow him to come in to work later when he needed to, but as it turned out, Nigro was able to be at work at his regular early start time.  (ER 317:1 – 24, 530:12 – 533:16.)

Nigro testified that other than a later start time (of which he did not avail himself), no other accommodations were necessary.  (ER 194:2 – 9.)   (Foss also testified that Nigro never requested any accommodation other than a later start time.  (ER 639:3 – 12; 641:11 – 14.))  Despite his unqualified admission at deposition, Nigro now contends he requested a transfer to other positions in May 2009, and he claims his purported reason for doing so was because of his ulcerative

colitis. Significantly, however, while Nigro did complain about his job and inquired about transfer to another store in some e-mails to upper management, he never once mentioned he needed a transfer due to his ulcerative colitis. (ER 560;16-21; 563:3 – 564:11; 564:7-18; 566:9-13; 567:5-20; 568;14 – 569:6; 570:2-8; 583:24 – 584:6; 594:3 – 595:3; 609:17 – 610:12; 627, 628- 629; 630; 694, ¶¶ 2 & 5; 697.) The only person whom Nigro contends he informed he needed a different position because of his condition was Petty, and he testified that Petty referred him to Foss, who allegedly told him he could have any position in the building. (ER 605:7 – 606:18.)[4]

### D. On June 5, 2009, Nigro Stopped Coming to Work, for Good.

On June 5, 2009, Nigro went out sick and never returned to work at Sears again. (ER 572:1-3.) Foss testified:

> Q: Just prior to your transfer to the Escondido store from the Carlsbad store, did Mr. Nigro come to you and ask you for time off from work as a result of his medical condition, colitis?
>
> A: Just prior to my transfer? Yes.
>
> Q: What was your response to that request?
>
> A: Like I said, I believe it was the last day or so, and he came to me. He wasn't getting paid. It was a stressful time for him. He was sick. And he

---

[4] Nigro also testified that Foss allegedly told him that Foerster was "preventing him from accommodating him anymore." (ER 606:19-20.) This statement is inadmissible hearsay. Fed. R. Evid. 801 & 802.

> basically said that, I'm sick. I'm not going to be
> able to come in." And I said, "you have got to do
> what you have to do to take care of yourself."

(ER 644:14 – 645:4.)  Foss further testified that he could not approve a medical

leave for Nigro:

> Q:    Did you have to get approval from Genevieve
>       Petty for that request [to take time off in June
>       2009]?
>
> A:    He would have had to file the paperwork, you
>       know, just like it's done every time. And then
>       the benefits department would be the one that would
>       approve his leave.

(ER 645:5-10.)  However, prior to July 24, 2009, Nigro never submitted any leave

paperwork to Sears.  (ER 317:25 – 318:3; 528:24 – 529:23; 604:21-24; 694, ¶ 3;

699.)

Further, Nigro was supposed to follow the absence procedure in Sears'

attendance policy, which he signed on May 7, 2007.  The attendance policy

provides, in pertinent part:

> Associates must call a store-specific number, as soon as
> possible, to report an absence or tardy. This information
> will be used to plan for how we will satisfy our
> customers during the associate's absence, as well as to
> better understand the reason for an associate absence.
>
> ( . . . )
>
> 1.    An associate who has an unexcused absence form
>       work for two consecutive days, without notifying

17

> Sears via the defined call-in process, is subject to immediate termination.
>
> 2.    For illness absences of 7 consecutive days or more associates are required to provide a physician's release to return to work.
>
> 3.    Full-time associates absent 7 consecutive days or more due to illness are required to call MetLife at 1-888-868-3997.    MetLife determines compensability and verifies the need to be absent.

(ER 763, ¶ 3; 768.)  Despite these clear directives, Nigro did not follow them. Instead, he called in sick during the month of June 2009.  He did not provide a doctor's note until July 24, 2009, and he never completed any paperwork requesting a medical leave of absence, as he had for his March 2008 and December 2008 leaves.  (ER 317:25 – 318:3; 528:24 – 529:23; 604:21-24; 645:1-10; 694, ¶ 3; 699.)

Although some specifics of their conversation are disputed,[5] Nigro also called and spoke to Foerster, the store manager of the Carlsbad store, on June 29, 2009.  (Foss had transferred to another store on June 16, 2009.  (ER 702, ¶ 8.))  According to Nigro, he told Foerster that he believed he would be able to return to work on July 25, 2009, if his pay was restored and he could have a later start time,

---

[5] Nigro contends – and Foerster denies – that Foerster told him during the June 29, 2009, conversation, "If you're going to stick with being sick, it's not helping your situation.  It is what it is.  You're not getting paid, and you're not going to be accommodated."  (ER 196:12-14; 694, ¶ 4.)  Assuming *arguendo* Foerster made this statement (which he denies), it does not create a genuine material factual dispute, as discussed *infra*.

but he could not work before then. (ER 195 – 196, ¶¶ 2 & 3.) Following the conversation between Nigro and Foerster on June 29, 2009, Sears continued to allow Nigro to remain off of work. Although Sears could have done so under the terms of the attendance policy, it did not terminate Nigro's employment, despite his lengthy absence from work or failure to submit any documentation substantiating his claimed inability to work. (ER 763, ¶ 3; 768)

### E. Nigro Was Terminated for Job Abandonment on August 5, 2009.

On June 29, 2009, 88Sears called Petty regarding Nigro. Petty advised the 88Sears caller that Nigro had been out since early June. (ER 701, ¶ 5; 718.) On or about July 22, 2009, 88Sears instructed the store to send Nigro a letter advising him that his employment would be terminated for job abandonment if he did not contact Foerster by July 25, 2009. (ER 694, ¶ 3; 701 ¶ 5; 718.) Sears sent a letter to Nigro on July 23, 2009, under Foerster's signature, which read:

> Dear Anthony Nigro:
> Our records indicate that you were scheduled to work from 06/08/2009 to 06/29/2009. You have not reported for your schedule [sic] shifts. We have not heard from you since 06/29/2009. You were scheduled to bring in your doctor's note for your unexcused absences by 07/01/2009. You fail [sic] to do so.
>
> Please contact Larry Foerster within two days of the date of this letter to discuss this situation. Failure to contact us within two days of the date of this letter will result in

termination of your employment for job abandonment effective 07/25/2009.

Respectfully,

Larry Foerster
Store Manager

(ER 694, ¶ 3; 699.)  Sears mailed the letter to Nigro on July 23, 2009, and Nigro received it on July 24, 2009.  (ER 577:11-19; 676:22 – 25; 694, ¶ 3; 699.)

Nigro testified that on the day he received Sears' July 23 letter, he went to the store and dropped off a note from his doctor indicating he had applied for disability benefits and should be off work until September 5, 2009, as well as a second doctor's note taking him off work from June 5 – 20, 2009.  (ER 578:10 – 579:5; 579:22 – 580:7; 580:16 – 581:4; 631 – 634.)  Prior to July 24, 2009, Nigro had not provided the doctor's note to Sears.  (ER 590:2-16.)  Included with the materials Nigro delivered was a letter which concluded, ". . . I will seek legal action for the willful and intentional acts that have been brought upon me by Sears and its Managers."  (ER 580:16 – 581:4; 632.)

Although Nigro knew Foerster was in the store when he dropped off this paperwork and nothing prevented him from speaking to Foerster, Nigro made no attempt to contact Foerster, as directed in the July 23 letter.  (ER 579:22 – 580:15; 581:5-17; 699.)  Instead, Nigro left the paperwork with an office clerk and directed

the clerk to leave the paperwork in Petty's box – even though Nigro knew Petty was out-of-the-office on vacation.  (ER 578:22 – 579:5.)

Nigro heard nothing from Petty or Foerster after he left the paperwork. Instead, he e-mailed Chris Adams, the district manager and Foerster's supervisor, on July 28, 2009.  His e-mail to Adams stated:

> Chris,
> I received a letter from Larry [Foerster] stating I was terminated effective 7/25.  I am still active in the system. I ask that this be corrected in the system and my final check be mailed to me.  I can not [sic] cash out my 401k that I need to live on until this is completed.
>
> Thank you.
> Anthony Nigro

(ER 593:6-18; 635.)  Nigro testified he sent this e-mail because he wanted to get the money out of his 401-K account and believed he needed to be terminated from his employment at Sears to do so.  (ER 593:6-18; 595:20-24.)  Nigro admitted that he did not know whether Petty or Foerster had seen the paperwork he left at the store on July 24 at the time he sent this e-mail (nor, ostensibly, did he care).  (ER 596:13-17.)

In response to his July 28 e-mail, Sears did as Nigro requested.  Anthony Haggard, who replaced Foss after Foss transferred to another store in mid-June 2009, called 88Sears and was advised that Plaintiff's termination should be processed as of July 29, 2009.  (ER 701, ¶ 4; 718.)  On August 5, after she returned

21

from her vacation, Petty processed Nigro's termination and indicated the reason for termination as "job abandonment."  (ER 665:16 – 666:24; 671.)

## VI.    SUMMARY OF ARGUMENT

### A.    Standard of Review

A *de novo* standard of review applies to a district court's order granting summary judgment.  In conducting its *de novo* review, this Court may affirm summary judgment on any ground supported in the record, whether or not relied upon by the district court.  *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.,* 555 F.3d 772, 776 (9th Cir. 2009); *Valdez v. Rosenbaum*, 302 F.3d 1039, 1043 (9th Cir. 2002).

### B.    The Absence of a Genuine Issue of Material Fact Warrants the Grant of Summary Judgment in the Moving Party's Favor.

Where "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," a court should grant summary judgment.  Fed. R. Civ. Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 324 (1986).  In addressing a motion for summary judgment, the court is not required to search the record for a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The non-moving party has the burden to identify with reasonable particularity the evidence that precludes summary judgment.  *Id.*  "A 'scintilla of

evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (citations omitted). Conclusory, speculative testimony is also insufficient to defeat summary judgment. *Thornhill Publishing Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

>C. **Since Sears Accommodated Nigro's Alleged Disability, Summary Judgment Should Be Affirmed in Sears' Favor on the Claim for Failure to Accommodate under FEHA.**

Nigro's failure to accommodate claim under FEHA fails because he cannot establish an essential element of his *prima facie* case: a failure to accommodate. Cal. Gov. Code § 12940(m); *Wilson v. County of Orange*, 169 Cal.App.4th 1185, 1192 (2009). The only time period at issue, as confirmed in the AOB, is May 4 – August 5, 2009. (AOB page 15.) During this period, Sears accommodated Nigro in his existing QMA position by allowing him a later start time (which he did not take) and time off from work when his condition again flared, leaving him unable to work. These were the only accommodations Nigro advised Sears he needed (albeit without providing a doctor's note) for his alleged disability.

Providing a modified work schedule and time off from work are reasonable accommodations under FEHA. Cal. Gov. Code § 12926(o)(2); Cal. Code Regs. tit. 2, § 7293.9(a)(2); *Hanson v. Lucky Stores, Inc.*, 74 Cal.App.4th 215, 226 (1999).

Since Sears was able to provide reasonable accommodations to Nigro in his existing position, Sears was not required to grant Nigro's requests for a transfer in May 2009. A transfer need only be considered if an employer is unable to accommodate an employee in his existing position, and an employer does not have to provide the "best" accommodation or the specific accommodation an employee seeks. Rather, an employer need only provide a reasonable accommodation, which Sears did. *Raine v. City of Burbank*, 135 Cal.App.4th 1215, 1222 – 1223 (2006).

Nigro's contention that Sears had to grant him the specific accommodation he allegedly requested is founded on a distinguishable decision, which concerned a supervisor's failure to permit an accommodation which the employer had previously agreed to provide. *A.M. v. Albertson's*, 178 Cal.App.4th 455, 464 (2009). However, in this case, Sears provided other reasonable accommodations to Nigro and had not agreed to transfer him upon his May 4, 2009, return from leave. Nigro's other contention – that Foerster's alleged statement "you're not going to be accommodated" is evidence of failure to accommodate – is belied by the undisputed fact that Sears did accommodate Nigro. Summary judgment in Sears' favor should be affirmed on this claim.

24

**D. Since Sears Not Only Engaged in the Interactive Process, but Nigro Caused Any Breakdown, Summary Judgment Should Be Affirmed in Sears' Favor on the Failure to Engage in the Interactive Process Claim.**

While an employer is obligated to engage in the interactive process with an employee who is a qualified individual with a disability, the employer need only do so if the employee has put it on notice that an accommodation is needed. Cal. Gov. Code § 12940(n); *King v. United Parcel Service, Inc.*, 152 Cal.App.4th 426, 443 (2007); *Spitzer v. The Good Guys, Inc.*, 80 Cal.App.4th 1376, 1384 (2000). When Nigro returned to work on May 4, 2009, the only information he provided to Sears was a doctor's note releasing him to return to full work duty in his existing position, with no restrictions. In May 2009, when he claims he requested a transfer, he never advised Sears that he was requesting transfer for medical reasons.

Furthermore, an employer who provides an employee with the accommodation requested is not liable for failure to engage in the interactive process. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1115 (9th Cir. 2000), *vacated on other grounds*, *U.S. Airways, Inc., v. Barnett*, 535 U.S. 391 (2002). Although he provided no doctor's note or other medical documentation, Sears granted Nigro's request for a later start time and, starting on June 5, 2009, additional time off from work. Sears granted Nigro the specific accommodations he requested and is not liable for failure to engage in the interactive process.

25

Additionally, this claim fails because Nigro himself caused any breakdown in the process when he refused to engage with Sears following receipt of its July 23, 2009, letter and requested his own termination via a July 28, 2009, e-mail to the district manager. An employer is not liable for failure to engage in the interactive process when the employee is responsible for the communication breakdown. *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 743 (9th Cir. 2011); *Barnett*, 228 F.3d at 1115.

**E.    Summary Judgment Should Be Affirmed on the Disability Discrimination Claim Because Nigro Cannot Prove Discriminatory Animus, an Essential Element of His Claim, and He Concedes That Sears Terminated His Employment for a Legitimate, Nondiscriminatory Reason, Without Pretext.**

The district court's order granting summary judgment in Sears' favor on the disability discrimination claim should be affirmed for the following reasons.

First, Nigro not only cannot meet his burden of proving that Sears acted with discriminatory animus, which is an essential element of his claim (*Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 355 (2000); *Avila v. Continental Airlines, Inc.*, 165 Cal.App.4th 1237, 1246 (2008)), but Nigro does not even address this issue in the AOB. By not addressing it, he has waived any contention that Sears acted with discriminatory animus, and the district court's finding that there is no genuine issue of material fact on this essential element of Nigro's claim should be affirmed. *Recinto v. United States Dep't of Veterans Affairs*, 706 F.3d 1171, 1174 (9th Cir.

2013); *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005). Nigro's alternate argument – that discrimination must be found because Sears allegedly failed to accommodate his disability – fails because Sears did accommodate Nigro (and Nigro does not address the discriminatory animus requirement, in any event). Moreover, the case upon which Nigro relies is distinguishable, because in that case, the alleged failure to accommodate was what ultimately led to the employee's termination, which is not the situation here. *Humphrey v. Memorial Hosp. Ass'n*, 239 F.3d 1128 (9th Cir. 2011).

Second, Nigro concedes that Sears terminated his employment for job abandonment. His reliance on *Humphrey* for the proposition that termination for job abandonment "caused by his absenteeism" equates with disability discrimination is unavailing, since the facts of that case are distinguishable. Sears did not cause Nigro to be absent nor terminate his employment because he was absent as a result of a disability that Sears failed to accommodate. Rather, Sears terminated Nigro because he failed to follow Sears' procedures (which he had followed twice before) for requesting a medical leave of absence, refused to communicate as requested in Sears' July 23, 2009, letter, and requested by e-mail that he be terminated. As the district court found, if only Nigro had done what he was supposed to do, his termination may have been avoidable.

Third, Nigro has failed to meet his burden of establishing a triable issue as to whether Sears' stated reason for terminated him – job abandonment – was a pretext for unlawful discrimination. The burden shifted to Nigro to adduce evidence of pretext because Sears established in its moving papers that it had a legitimate, nondiscriminatory reason for terminating his employment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000); *Guz*, 24 Cal.4th at 355. Nigro does not argue pretext in the AOB, thereby waiving the issue on appeal. *Recinto*, 706 F.3d at 1171; *Kama,* 394 F.3d at 1238.

**F.    The Wrongful Termination in Violation of Public Policy Claim Was Properly Adjudicated in Sears' Favor Because of the Absence of an Underlying Public Policy Violation.**

Summary judgment should be affirmed on the wrongful termination in violation of public policy claim because Nigro cannot establish an underlying public policy violation, as his FEHA claims lack merit for the reasons discussed previously. *Silo v. CHW Med. Foundation*, 27 Cal.4th 1097, 1104 (2002); *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1253 (1994). Moreover, Nigro cannot prove a causal connection between his alleged disability and his termination, as he was terminated for job abandonment. *City of Moorpark v. Superior Court*, 18 Cal.4th 1143, 1161 (1998).

**G.    As to All Claims, Summary Judgment in Sears' Favor Should Be Affirmed for the Additional Reason That Nigro Is Not a Qualified Individual with a Disability under FEHA.**

Summary judgment should also be affirmed on the additional ground, which was fully briefed but rejected by the district court, that Nigro cannot prove that he is a qualified individual with a disability, which is an essential element of his FEHA claims.  To recover under FEHA for disability discrimination, failure to accommodate, or failure to engage in the interactive process, a plaintiff must be able to prove that he was a qualified individual with a disability, meaning he could perform the essential functions of his job without or without reasonable accommodation.  Cal. Gov. Code § 12940(a)(1); *Green v. State of California*, 42 Cal.4th 254, 267 (2007); *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal.App.4th 952, 981 – 982, 984 (2008).  Here, it is undisputed that Nigro was not a qualified individual with a disability, since his ulcerative colitis was not only incurable, but so debilitating that it precluded him from working in any capacity when he was experiencing one of his frequent, severe flare-ups of the condition. Attendance at his physical work site was one of the essential functions of Nigro's QMA position, since he was required to perform building maintenance.  When attendance at the physical work location is an essential job function and an employee cannot perform all work-related duties at home, an employee who cannot come to work is not a qualified individual with a disability.  *Samper v.*

29

*Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1239 (9th Cir. 2012).

Furthermore, Sears did not need to continue to provide Nigro with leaves of

absence, since there is no evidence that any need to provide such leaves would

have ever abated. *Id.* at 1240 – 1241; *Hanson*, 74 Cal.App.4th at 226.

## VII. ARGUMENT

### A. Summary Judgment Should Be Granted Whenever There Is No Genuine Issue of Material Fact.

"One of the principal purposes of the summary judgment rule is to isolate

and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323

– 324. Thus, where "[t]he pleadings, depositions, answers to interrogatories and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law," a court should grant summary judgment. Fed. R.

Civ. Proc. 56(c).

The moving party bears the initial burden of identifying those portions of the

pleadings, discovery and affidavits that demonstrate the absence of material fact.

*Celotex*, 466 U.S. at 322. On issues for which the non-moving party will have the

burden at trial, the moving party need only point out "that there is an absence of

evidence to support the non-moving party's case." *Id.* at 325. Once the moving

party meets its burden, the non-moving party must go beyond the pleadings and, by

its own affidavits and other supporting evidence, "set forth specific facts showing

that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). If the non-moving party fails to meet this showing, "the moving party is entitled to judgment as a matter of law." *Id.*

In addressing a motion for summary judgment, the Court is not required to search the record for a genuine issue of triable fact. *Keenan*, 91 F.3d at 1279. The non-moving party has the burden to identify with reasonable particularity the evidence that precludes summary judgment. *Id.* The "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings" but must "set forth **specific facts** showing there is a genuine issue for trial." *Id.* (emphasis added). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Celotex*, 477 U.S. at 324.

"A 'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." *United Steelworkers of Am.*, 865 F.2d at 1542 (citations omitted). Conclusory, speculative testimony in affidavits and moving papers is also insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publishing Co., Inc.*, 594 F.2d at 738. Additionally, a dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and "material" only if necessary to the proof or defense of a

31

claim, as determined by reference to applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 – 249 (1986).

**B.** **Summary Judgment Was Properly Entered for Sears on the Failure to Accommodate Claim.**

Nigro contends Sears failed to accommodate him from May 4 – August 5, 2009, only. (AOB page 15.) Under FEHA, an employer must provide a reasonable accommodation for an employee with a known physical disability, unless the accommodation would cause undue hardship. Cal. Gov. Code § 12940(m). The elements of a *prima facie* claim for failure to accommodate are: (1) the plaintiff has a disability under FEHA; (2) the plaintiff is qualified to perform the essential function of the position; and (3) the employer failed to reasonably accommodate the plaintiff's disability. *Wilson*, 169 Cal.App.4th at 1192. As discussed below, no genuine issue of material fact exists on Nigro's failure to accommodate claim, for several reasons.

**1.** **Sears Accommodated Nigro's Alleged Disability and Was Not Required to Transfer Him to Another Position.**

Although Nigro admits he was released to return to full work duty with no restrictions on May 4, 2009 (AOB page 19; ER 687, 691), he contends Sears failed to accommodate him because Sears did not grant his requests for transfer to

another position in May 2009.  (AOB page 20.)  Not only is this contention unsupported by admissible evidence,[6] but it is contrary to law.

The obligation to accommodate is triggered by knowledge of the existence of a disability requiring accommodation.  Cal. Gov. Code § 12940(m); *King*, 152 Cal.App.4th at 443; *Spitzer*, 80 Cal.App.4th at 1384.  It is undisputed that in May 2009, when he claims he requested a transfer, Nigro was released to return to full work duty in his existing position, with no restrictions, starting on May 4, 2009. Thus, no accommodation of his alleged disability was necessary in May 2009.

Even if it had been obligated to do so, Sears accommodated Nigro's alleged disability in a reasonable manner, as Foss allowed Nigro a later start time (which, as it turned out, Nigro did not need, in any event).  Thus, Sears was not required to transfer him to another position.  A requested job reassignment need not be considered unless an employee cannot be accommodated in his *existing position*. *Raine*, 135 Cal.App.4th at 1222 – 1223.  As the California Court of Appeal explained, an employer's obligation is to provide a disabled employee a "reasonable" accommodation, not the specific accommodation requested.

> FEHA does not obligate an employer to choose the best accommodation or the specific accommodation a

---

[6] Nigro offered only inadmissible hearsay in support of his contention that his transfer requests were denied.  (ER 189; 282 – 286; 320 – 323; 342 – 343.)  Such hearsay testimony is insufficient to defeat summary judgment and is entitled to no weight.  *Scosche Industries, Inc. v. Visor Gear Inc.*, 121 F.3d 675, 681 (9th Cir. 1997).

disabled employee or applicant seeks. (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 228 [87 Cal.Rptr.2d 487].) It requires only that the accommodation chosen be "reasonable." (§ 12940, subds. (a) & (m).) Although FEHA does not define what constitutes "reasonable accommodation" in every instance, examples provided in the statute itself and the regulations governing its implementation include job restructuring, part-time or modified work schedules or "reassignment to a vacant position." (§ 12926, subd. (n)(2);[7] Cal. Code Regs., tit. 2, § 7293.9, subd. (a)(2); see also *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 266 [102 Cal.Rptr.2d 55] (*Jensen*).)

*Id.* at 1223 (original citations included).

Here, Sears accommodated Nigro in his existing position. Nigro testified at deposition that the only accommodation he needed in May 2009 was a later start time. (ER 194:2-9.) This admission is binding on Nigro. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009), Sears, through Nigro's supervisor, Foss, allowed Nigro the later start time requested from May 4 – June 4, 2009,[8] and, subsequently, Sears permitted Nigro to take time off work and held his position

---

[7] The subdivisions of the statute have been re-lettered since this opinion was issued. The relevant provision is now found at Cal. Gov. Code § 12926(o).

[8] Nigro's argument that did not allow him a later start time after May 4, 2009, is not only contrary to the undisputed facts, but it is a red herring. It is undisputed that Foss, Nigro's direct supervisor, told Nigro he could have a later start time, if he needed it. (ER 317:1-24; 530:12 – 533:16.) Furthermore, the issue is irrelevant, since Nigro admitted that he was able to work at his regular, earlier start time during the period from May 4 – June 4, 2009, and after that date, Nigro did not come to work at all. (ER 572:1-3.)

open until Nigro abandoned his job. A modified work schedule is a reasonable accommodation under FEHA, as is a leave of absence. Cal. Gov. Code § 12926(o)(2); Cal. Code Regs. tit. 2, § 7293.9(a)(2); *Hanson*, 74 Cal.App.4th at 226.

Since Sears provided Nigro with reasonable accommodations in his existing position, it did not need to entertain his alleged requests for a transfer to another. *Raine*, 135 Cal.App.4th at 1223. Moreover, Sears was not required to provide Nigro with a different or "better" accommodation upon request,[9] but only with a "reasonable" accommodation, which Sears did. *Raine*, 135 Cal.App.4th at 1223; *Hanson*, 74 Cal.App.4th at 228.

The fact that Sears provided Nigro with other accommodations, whether during the period after May 4, 2009, or prior, did not obligate Sears to provide Nigro with every specific accommodation he allegedly requested. Nigro's reliance on a distinguishable decision for such a proposition is unfounded. *A.M. v. Albertson's*, 178 Cal.App.4th 455. In *Albertson's*, the employer was found liable for failure to accommodate when a supervisor did not allow an employee to take a restroom break, with disastrous results. The California Court of Appeal held the employer was liable even though the failure to accommodate was a one-time

---

[9] Notably, Nigro never informed Sears that he was requesting a transfer because of his alleged disability. (ER 560:16-21; 563:3 – 564:11; 564:7-18; 566:9-13; 567:5-20; 568:14 – 569:6; 570:2-8; 583:24 – 584:6; 594:3 – 595:3; 609:17 – 610:12; 627 – 629; 630; 694, ¶¶ 2 & 5; 697.)

occurrence and resulted from the new supervisor not having been advised of the employee's condition and the employer's prior agreement to allow the employee to take frequent restroom breaks. By contrast, in this case, Sears had not agreed to transfer Nigro to another position upon his return from leave on May 4, 2009, and to Sears' knowledge, no such transfer was necessary, since he had been released by his doctor to full work duty with no restrictions. Moreover, as discussed, Sears provided Nigro with other reasonable accommodations: a later start time if needed and time off from work. Since Sears complied with any requirement to provide Nigro with reasonable accommodations, summary judgment was proper on the failure to accommodate claim.

### 2. The Alleged June 29, 2009, Statement by Foerster Is Immaterial.

Despite the uncontroverted facts establishing that Sears provided him with reasonable accommodations, Nigro contends that Foerster's alleged June 29, 2009, statement "you're not going to be accommodated" is an "admission" to the contrary. (AOB page 23.) Assuming *arguendo* Foerster made this purported statement, it is irrelevant and does not alter the undisputed evidence that Sears *did* provide Nigro with reasonable accommodations. Prior to this alleged statement, Sears allowed Nigro him a later start time (although he did not need it) and permitted him to take more time off work. After the alleged statement, Sears continued to accommodate Nigro by allowing him to remain off work in June and

36

July 2009.  Foerster's alleged statement is irrelevant and immaterial.  It does not create a genuine issue of material fact, since it would not enable a trier of fact to find for Nigro on the failure to accommodate claim.  *Anderson,* 477 U.S. at 248 – 249.

### C.  The Claim for Failure to Engage in the Interactive Process Was Properly Adjudicated in Sears' Favor Because Sears Not Only Complied with the Law, but Nigro Unilaterally Ended the Process.

As with the failure to accommodate claim, the relevant time period for the failure to engage in the interactive process claim is from May 4 – August 5, 2009, only.  (AOB page 28.)  Under FEHA, it is an unlawful employment practice "[f]or an employer . . . to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical . . . disability. . . ."  Cal. Gov. Code § 12940(n).  In general, it is the disabled employee's responsibility to inform the employer that an accommodation is needed.  If an employee fails to request an accommodation, the employer cannot be held liable for failure to provide one.  *King*, 152 Cal.App.4th at 443; *Spitzer*, 80 Cal.App.4th at 1384.  As the district court also noted, an employer cannot be held liable for failure to engage in the interactive process when the employee caused the breakdown in the process.  *Dep't of Fair Emp't & Hous.*, 642 F.3d at 743.  (ER 16:6-9.)

Under application of these standards to the undisputed facts, Nigro's claim that Sears failed to engage in the interactive process is devoid of merit.

**1. Sears Not Only Engaged in the Interactive Process with Nigro, But It Also Accommodated Him.**

In the absence of evidence that the employee put the employer on notice that an accommodation is needed, the employer cannot be liable for failure to engage in the interactive process. *King*, 152 Cal.App.4th at 443; *Spitzer*, 80 Cal.App.4th at 1384. At deposition, Nigro admitted that the only document he provided Sears about his condition in May 2009 was a doctor's note, which confirmed he could work with no restrictions starting May 4, 2009.

Even though Nigro had no work restrictions, Sears granted the accommodations he requested after May 4, 2009. The only accommodation Nigro testified he needed in May 2009 was a later start time, and Foss granted that request. For the period on and after June 5, 2009, when Nigro was calling in sick, Sears continued to engage in the interactive process. On or about June 5, 2009, Nigro testified that he told Foss he was sick and could not work. Foss told him he could take time off. Indeed, Sears did not require Nigro to complete any leave of absence paperwork – even though he had done so on multiple prior occasions. Instead, Nigro contacted Sears a few times in June 2009 to report that he was still sick and would not be coming to work. (ER 575:2-10; 576:2-17.) Although Nigro did not comply with Sears' internal process for requesting a leave of absence,

38

Sears still accommodated him and allowed him time off. Sears granted Nigro the accommodation he requested – time off from work – and, thus, complied with its obligation to engage in the interactive process. *Barnett*, 228 F.3d at 1115.

Nigro contends that Foerster's alleged statements during the June 29, 2009, conversation about purportedly "not accommodat[ing]" him constitute a failure to engage in the interactive process. However, assuming Foerster made such a statement, it does not support Nigro's claim. It is undisputed, by Nigro's own admission, that he remained unable to work at all following this alleged conversation with Foerster, and Sears continued to allow him to remain off of work. In fact, Nigro claims he told Foerster he believed he could return to work on July 25, 2009 (ER 196:9-11), and Sears continued to allow Nigro to remain off of work – without submitting any supporting paperwork – through that date. Thus, whether Foerster told Nigro that he would not be accommodated or not, the fact remains that Sears did continue to accommodate Nigro following this alleged conversation by granting the time off he contends he needed.

### 2. Because Nigro by His Own Conduct Ended the Interactive Process in Late July 2009, Sears Is Not Liable for Any Breakdown.

Not only did Sears engage in the interactive process, but Sears is not liable on this claim because it is undisputed that Nigro himself caused the breakdown in the process after July 23, 2009. An employer is liable for failure to engage in the

interactive process only if the employer is responsible for the communication breakdown. If the employee is responsible for the breakdown in the interactive process, as here, the employer is not liable. *Dep't of Fair Emp't & Hous.,* 642 F.3d at 743; *Barnett*, 228 F.3d at 1115.

Despite the clear direction in the July 23, 2009, letter from Sears, Nigro refused to discuss his work status with Foerster. Nigro could not refuse to communicate with Foerster, as directed. *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 266 (2000) (employee cannot "legitimately refuse" to talk to personnel regarding possible accommodations of employee's disability). Instead of communicating directly with Foerster, Nigro merely dropped off paperwork with a clerk on July 24, 2009, and asked that the clerk leave the paperwork in Petty's box. Nigro did this despite knowing that Foerster was working in the store that day, and that Petty was on vacation until after the July 25, 2009, response deadline. After leaving the paperwork with the clerk, Nigro did nothing to follow-up with Sears regarding his medical status. Instead, he e-mailed the district manager (Foerster's supervisor), on July 28, 2009, and asked that he status be coded as "terminated" in the system so he could access the funds in his 401-K account. Nigro admitted that he did not even know if Foerster, Petty, or anyone else had seen the contents of his July 24, 2009, delivery when he requested to be coded as "terminated."

Nigro's representation in the AOB that "the only response [to the July 24, 2009, letter] Mr. Nigro received from Sears was a notice of termination" is false. (AOB page 31.)  Sears did not terminate Nigro in "response" to his July 24, 2009, letter.  Rather, Sears terminated Nigro for job abandonment because he did not communicate with Foerster as directed prior to July 25, 2009, continued to not return to work, and e-mail of July 28, 2009, requesting his status be coded as "terminated."   (ER 635; 666; 675; 676 – 677; 718.)

Because Nigro caused the breakdown in the interactive process, Sears is not liable on the failure to engage claim, as a matter of law and undisputed fact.  *Dep't of Fair Emp't & Hous.,* 642 F.3d at 743.

> **D.** **Summary Judgment Was Properly Entered for Sears on the Disability Discrimination Claim Because Nigro Cannot Prove Discriminatory Intent, and Sears Had a Legitimate, Nondiscriminatory Reason for Terminating Nigro.**

An employer is entitled to summary judgment on a disability discrimination claim if it can show either:  (1) the plaintiff cannot establish an essential element of its *prima facie* case; or (2) the employer had a legitimate, non-discriminatory reason for the adverse employment action. *Guz*, 24 Cal.4th at 355 – 356; *Avila*, 165 Cal.App.4th at 1247.   Here, Sears established both.   Summary judgment was properly entered for Sears on the disability discrimination claim.

1. **Nigro Cannot Prove Discriminatory Intent, Which Is An Essential Element of His *Prima Facie* Case of Disability Discrimination.**

To establish a *prima facie* case of disability discrimination, Nigro has the burden of proving by a preponderance of the evidence each of the following: (1) he had a disability; (2) he was otherwise qualified to do his job; (3) he suffered an adverse employment action; and (4) Sears harbored discriminatory intent. *Guz*, 24 Cal.4th at 355; *Avila*, 165 Cal.App.4th at 1246. As discussed *infra*, since Nigro was not a qualified individual with a disability, summary judgment should have been granted for Sears on that basis, alone. Cal. Gov. Code § 12940(a)(1); *Green*, 42 Cal.4th at 267. However, the district court held correctly that Nigro cannot prove that Sears harbored discriminatory intent and properly entered summary judgment on that basis. (ER 9:11 – 10:7.)

Nigro has abandoned his contention that Sears harbored discriminatory animus by not addressing it in the AOB, thus waiving the issue. *Recinto*, 706 F.3d at 1174; *Kama*, 394 F.3d at 1238. As evidence Sears submitted in support of its summary judgment motion shows, Nigro never heard that Foerster or Adams said anything negative about his medical condition. (ER 586:7-25.) Nobody ever told Nigro they heard Adams or Foerster make any comments indicating they did not want someone with Nigro's condition working for Sears. (ER 587:19 – 588:1.) Nobody ever told Nigro that any manager at Sears was upset with him having

42

taken leaves of absence. (ER 589:3-6.) Likewise, Foss never heard Foerster, Adams, Petty, or anyone else make disparaging remarks regarding Nigro's alleged disability, nor did Foss hear them say they were watching or investigating Nigro because of his condition. (ER 646:7-14; 646:22 – 648:22; 650:21-23; 651:19 – 652:9; 652:21-23; 653:20 – 654:13; 654:24 – 656:3.) Foss also never heard anyone say they wanted Plaintiff fired because of his alleged disability. (ER 649:7-15; 652:10-20; 654:18-23; 656:4-14.) Since it is undisputed that Sears did not act with discriminatory animus, summary judgment on the disability discrimination claim should be affirmed. *Guz*, 24 Cal.4th at 355.

Instead of arguing that there is a disputed material factual issue as to whether Sears had discriminatory intent, which is an essential element of his *prima facie* case, Nigro argues that because Sears allegedly failed to accommodate his supposed disability or engage in the interactive process, it follows that Sears discriminated against him. (AOB pages 31 – 32.) Assuming *arguendo* that Nigro's argument is correct, it follows that the discrimination claim necessarily fails, since as discussed *supra*, summary judgment was properly entered for Sears on Nigro's failure to accommodate and engage in the interactive process claims.

Moreover, the case upon which Nigro relies in support of this argument is distinguishable. *Humphrey*, 239 F.3d 1128. In *Humphrey*, the plaintiff, a medical transcriptionist with obsessive compulsive disorder, was fired because of excessive

absenteeism and tardiness. However, the plaintiff in that case adduced evidence that the employer failed to accommodate her disability by allowing her to work at home or have a later start time, and as a result, the failure to accommodate caused her to have excessive absenteeism and tardiness, which, in turn, led to her discharge. This Court stated,

> The link between the disability and termination is particularly strong where it is the employer's known failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability.

*Id*. at 1140. By contrast, in this case, Nigro was not terminated for absenteeism resulting from his disability or a failure to accommodate his disability. Rather, he was terminated for job abandonment, which resulted from his failure to communicate with Foerster as directed prior to July 25, 2009, continued failure to return to work, and July 28, 2009, e-mail to the district manager, requesting termination. (ER 635; 666; 675; 676 – 677; 718.)

## 2. Sears Has a Legitimate, Nondiscriminatory Reason for Terminating Nigro's Employment.

Even if Nigro could establish a *prima facie* case of disability discrimination, summary judgment for Sears should be affirmed because Sears had a legitimate, nondiscriminatory reason for terminating his employment: failure to comply with Sears' attendance and leave policies resulting in job abandonment. (ER 10:8-10.) *Reeves*, 530 U.S. at 142 – 143; *Guz*, 24 Cal.4th at 355.

44

Surprisingly, in the AOB, Nigro concedes the validity of the stated reason for his termination, stating, ". . . [T]he district court is correct that Mr. Nigro was terminated by Sears for 'job abandonment' resulting from absenteeism. . . ." (AOB page 33.) However, Nigro argues that the "job abandonment [was] caused by his absenteeism" and, thus, not a legitimate business reason to terminate him. He cites *Humphrey* in support of this argument. *Humphrey,* 239 F.3d 1128.

As discussed in the preceding section, *Humphrey* does not assist Nigro. Contrary to Nigro's argument, his job abandonment was not "caused by his absenteeism." His job abandonment was caused by Nigro's repeated failure, if not outright refusal, to follow Sears' procedures for reporting absences, requesting medical leave, and communicating with Sears in response to its July 23, 2009, letter, followed by Nigro's e-mail to the district manager on July 28, 2009, requesting termination. Nigro affirmatively engaged in each of the foregoing actions (or inactions), which caused his inevitable termination. As the district court found,

> The termination of Nigro's employment due to job abandonment may have been avoidable if Nigro had complied fully with Sears' attendance policy and/or taken the necessary steps to request and obtain an official medical leave of absence. However, he did neither, resulting in Sears' determination that he had abandoned his position.

(ER 12:18-22.)  This Court and others, in addition to the district court, have held that violation of company policy is a legitimate, nondiscriminatory reason for employment termination.  *Dumas v. New United Motor Mfg., Inc.*, 305 Fed.Appx. 445, 448 (9th Cir. 2008) (failure to follow company policy by obtaining permission for a leave of absence); *Day v. Sears Holdings Corp.*, 2013 U.S. Dist. LEXIS 41052, *48 (C.D. Cal. March 13, 2013).

### 3. Nigro Does Not Challenge the District Court's Finding That Sears' Reason for Terminating Him Was Not a Pretext for Discrimination, Thereby Waiving the Issue.

An additional basis for the district court's granting of summary judgment in Sears' favor was its finding that Nigro "has provided no evidence" that Sears' reason for termination "was a pretext to terminate his employment because of his disability."  (ER 12:23-25.)  Since Sears had a legitimate, nondiscriminatory reason for terminating him, the burden shifted to Nigro to establish a triable issue on the question of whether Sears' reason for termination was a pretext for disability discrimination.  *Reeves*, 530 U.S. at 143; *Guz,* 24 Cal.4th at 355. However, Nigro does not address this basis of the district court's decision in the AOB, thereby waiving the issue on appeal.  *Recinto*, 706 F.3d at 1174; *Kama*, 394 F.3d at 1238.

### E. Nigro's Common Law Wrongful Termination Claim Fails Because of the Absence of an Underlying Public Policy Violation.

Because Nigro's statutory disability discrimination, failure to accommodate, and failure to engage in the interactive process claims fail, so, too, does his claim for wrongful termination in violation of public policy. A claim for wrongful termination in violation of public policy under California common law requires proof of the following elements: (1) a public policy; and (2) a nexus between the public policy and the termination of the plaintiff's employment. *Turner*, 7 Cal.4th at 1253. It is well-settled that a wrongful termination in violation of public policy claim will not stand in the absence of a violation of a fundamental public policy violation tethered to statutory or constitutional provisions. *Silo,* 27 Cal.4th at 1104. A claim of disability discrimination can form the basis of a wrongful termination in violation of public policy claim. *City of Moorpark*, 18 Cal.4th at 1161. However, as discussed *supra*, summary judgment was properly entered in Sears' favor on Nigro's disability discrimination and other claims. Consequently, summary judgment should be affirmed for Sears on the wrongful termination in violation of public policy claims, as well. The claim also fails for the additional reason that Nigro cannot prove a causal connection between his disability and his termination, as discussed, *supra*.

**F.  An Independent, Alternative Ground for Affirming the Judgment on All Claims Is Nigro's Inability to Meet His Burden of Proving He Was a Qualified Individual with a Disability.**

Not only was the district court correct in granting summary judgment on the grounds stated in the Order, but summary judgment should have also been granted as to all claims on an additional, independent ground, which was fully briefed, but rejected by the district court:  Nigro was not a qualified individual with a disability. *United Nat'l Ins. Co.,* 555 F.3d at 776; *Valdez*, 302 F.3d at 1043.  An essential element of a *prima facie* case of disability discrimination under FEHA is that the employee was a qualified individual with a disability, meaning that he could perform the essential functions of his job with or without reasonable accommodation.  Cal. Gov. Code § 12940(a)(1); *Green*, 42 Cal.4th at 267. Similarly, to establish a claim for failure to accommodate a disability or failure to engage in the interactive process, the employee must be able to prove that a reasonable accommodation was, in fact, possible.  *Nadaf-Rahrov*, 166 Cal.App.4th at 981 – 982, 984.  Since no reasonable accommodation was possible for Nigro's severe, chronic condition, which left him unable to work at all for months at a time, he could not perform the essential functions of his position with or without reasonable accommodation.  Nigro cannot meet his burden of proving an element of his *prima facie* case on each of his claims.

Attendance at one's physical work place may be an essential function of a job, and if an employee cannot regularly attend work due to a physical disability, he is not a qualified person with a disability under FEHA. As this Court held:

> Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise.

*Samper*, 675 F.3d at 1239, *citing E.E.O.C. v. Yellow Freight Systems, Inc.*, 253 F.3d 943, 948 (7th Cir. 2001) and *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 – 485 (7th Cir. 1999).[10]

It is undisputed that regular and timely attendance was an essential function of Nigro's QMA position, as well as all other hourly positions. Both Sears' Attendance Policy and Associate Handbook so provide, as does the written job description for the QMA position, which required Nigro to be on-site to conduct building maintenance. (ER 516:1-13; 519:13-24; 678:15-18; 701, ¶ 7; 741; 763, ¶ 3; 768.) In addition, Nigro admitted he knew Sears considered regular and timely attendance an essential job function from the time he started working at the company. (ER 502:18 – 504:8; 603:7-13.)

---

[10] Because California courts rely on federal discrimination cases to interpret FEHA, analysis pertaining to the ADA pertains to the FEHA, as well, in the absence of contrary authority interpreting FEHA. *Brundage v. Hahn*, 57 Cal.App.4th 228, 235 (1997).

Further, it is undisputed that Nigro's ulcerative colitis was so severe that he was unable to work at all for lengthy periods of time. As a result, Nigro took leaves of absence for three months in early 2008 and more than four months starting in December 2008 until May 4, 2009. Indeed, Plaintiff was not working again as of June 5, 2009, and he contends his physician told him he could not return to work until at least September 2009. Therefore, from January through August 2009, Plaintiff was able to work for only about one month, or less than 15 percent of the time.

Even though Sears accommodated Nigro's condition by allowing him medical leaves of absence and other time off work, Sears was not required to continue to do so indefinitely. *Samper,* F.3d at 1240 – 1241; *E.E.O.C. v. Yellow Freight,* 253 F.3d at 948. While the district court observed correctly that a leave of absence may be a reasonable accommodation, it is not a reasonable accommodation in all circumstances. As the California Court of Appeal held:

> . . . [A] finite leave of absence has been considered to be a reasonable accommodation . . . provided it is likely that following the leave the employee would be able to perform his or her duties.

*Hanson,* 74 Cal.App.4th at 226. However, in this case, Nigro offered no evidence that the cycle of severe flare-ups of his ulcerative colitis, lengthy leaves of absence or time off, and return to work for a few weeks or months, only to be followed by another flare-up and another lengthy leave of absence, would have ever abated.

50

The undisputed evidence is actually to the contrary, since Nigro was allegedly in the middle of a severe flare-up at the time he was terminated, and another debilitating severe flare-up was inevitable. (ER 760 – 761.) The FEHA does not require that an employer continue to provide leaves of absence to an employee with a chronic condition that repeatedly leaves the employee incapacitated and unable to perform any work for weeks or months at a time. *Samper*, 675 F.3d at 1240 – 1241 (despite employer's patience and accommodations, "there was literally nothing in the record to suggest the future would look different from the past," leaving the employer with little choice but termination).

Under the reasoning of *Samper*, Nigro was not a qualified individual with a disability, since a leave of absence would not have enabled him to perform an essential function of his job: attendance at his physical place of work. Since Nigro was not a qualified individual with a disability, FEHA's anti-discrimination provisions are not implicated, nor did Sears have an obligation to engage in the interactive process or accommodate Nigro. This undisputed fact is an additional basis for affirming the granting of summary judgment in Sears' favor on all claims. *Green*, 42 Cal.4th at 267; *Nadaf-Rahrov*, 166 Cal.App.4th at 981 – 982, 984.

## VIII. CONCLUSION

For all of the foregoing reasons, Sears respectfully requests that the Order granting its motion for summary judgment and the Judgment be affirmed in their entirety, and that Sears be awarded its costs on appeal.

Dated:  May 23, 2013                              Respectfully submitted,


/s/ Caryn M. Anderson
JODY A. LANDRY
CARYN M. ANDERSON
LITTLER MENDELSON, P.C.
Attorneys for Defendant-Appellee
SEARS, ROEBUCK AND CO.

52

## <u>STATEMENT OF RELATED CASES</u>

No other cases in this Court are deemed related to this case pursuant to Circuit Rule 28-2.6.

Dated: May 23, 2013                              /s/ Caryn M. Anderson
                                                  CARYN M. ANDERSON

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that:

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, the attached Answering Brief is proportionately spaced, has a typeface of 14 points or more, and contains 12,067 words.

Dated: May 23, 2013          <u>     /s/ Caryn M. Anderson     </u>
                                       CARYN M. ANDERSON

## PROOF OF SERVICE

CASE:     *Anthony V. Nigro v. Sears, Roebuck and Co.*

CASE NO:  United States Court of Appeals for the Ninth Circuit

Case No. 12-57262

I am employed in the City of Walnut Creek, California, County of Contra Costa. I am over the age of eighteen years and not a party to the within action; my business address is 1255 Treat Boulevard, Suite 600, Walnut Creek, California, 94597. I hereby certify that on May 23, 2013, I electronically filed the following with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system:

## APPELLEE SEARS, ROEBUCK AND CO.'S ANSWERING BRIEF

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this May 23, 2013, at Walnut Creek, California.

/s/ Gaye M. Rose
GAYE M. ROSE

Firmwide:120424270.1 016144.1316